# UNITED STATES COURT OF APPEALS
## Tenth Circuit
### Byron White United States Courthouse
### 1823 Stout Street
### Denver, Colorado 80294
### (303) 844-3157

Patrick J. Fisher, Jr.
Clerk

Elisabeth A. Shumaker
Chief Deputy Clerk

July 3, 1997

**TO:** All recipients of the captioned opinion

**RE:** 95-7163, King v. Union Oil Co.
July 1, 1997

Please be advised of the following correction to the captioned decision:

In the attorney section on page one of the opinion, counsel are erroneously listed. The correct designations are Mr. Lee, appearing for Defendant-Appellant, and Mr. Colbert, appearing for Plaintiff-Appellee.

Please make the correction.

Very truly yours,

Patrick Fisher, Clerk

Susie Tidwell
Deputy Clerk

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 1 1997**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

JERRY L. KING,

        Plaintiff - Appellee,

     v.

UNION OIL COMPANY OF
CALIFORNIA, doing business as
Unocal Corporation,

        Defendant - Appellant.

No. 95-7163,
96-7051

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**
**(D. Ct. No. CIV-94-502-B)**

---

David W. Lee, Law Offices of David W. Lee, Oklahoma, City, Oklahoma,
appearing for Defendant-Appellant.

Stephen D. Colbert, Flower Mound, Texas, appearing for Plaintiff-Appellee.

---

Before TACHA, LUCERO, Circuit Judges, and DANIEL,* District Judge.

---

TACHA, Circuit Judge.

---

*The Honorable Wiley Y. Daniel, District Judge for the United States
District Court for the District of Colorado, sitting by designation.

On September 11, 1992, defendant Unocal Corporation terminated plaintiff Jerry King's employment pursuant to a reduction in force. On September 10, 1993, King filed suit in federal district court, alleging that his termination was the result of unlawful discrimination on the basis of his race, physical disability, and in retaliation for filing a worker's compensation claim. The jury returned a verdict in favor of Unocal and we affirmed. See King v. Unocal Corp., 58 F.3d 586 (10th Cir. 1995) [hereinafter King I].

On September 7, 1994, King brought a second suit against Unocal, alleging that his former employer failed to pay him severance benefits in violation of the Employee Retirement Security Act (ERISA), 29 U.S.C. §§ 1001-1461. On cross motions for summary judgment, the district court concluded that res judicata did not preclude this second suit and that King was entitled to severance benefits under the plan. Unocal appeals this decision, and we now reverse on the basis of res judicata.

**BACKGROUND**

In 1977, King, an African-American male, began working for Unocal as a production technician in Carter County, Oklahoma. In May 1992, Unocal announced that it was planning to implement a reduction in force. In July 1992, King was injured on a company golf outing and notified Unocal of his injury pursuant to the Oklahoma Worker's Compensation Act, Okla. Stat. tit. 85, § 24.2.

On September 11, 1992, Unocal informed King that his employment was terminated pursuant to the reduction in force. On September 25, 1992, Unocal's human resources department informed King that because of his termination, he was eligible to participate in Unocal's Termination Allowance Plan ("Plan"). Under the Plan, King was entitled to receive two weeks of severance benefits for every two years of employment. To participate in the Plan, however, Unocal required King to file a Termination Allowance Claim Form ("Claim Form"), which included a release of any claims against Unocal arising out of King's termination.

On October 2, 1992, King submitted the Claim Form, which contained the release. King checked a box on the Claim Form indicating that his termination was due to his "[i]nability to perform job assignment . . . because of a disability resulting from illness or injury." App't. App. at 70. On October 14, 1992, Unocal's human resources department informed King that Unocal was unable to process his claim because he had erroneously checked the box indicating that his termination was due to a disability instead of, as Unocal asserted, a reduction in force. King was given another Claim Form for completion.

On October 22, 1992, King's attorney sent Unocal a letter stating that King intended to file a discrimination claim against the company arising from his termination, that King "does not intend to release or relinquish any of his rights,"

and that the previously executed release was "of no force and effect ." App't. App. at 73. The letter also threatened litigation if Unocal failed to pay King severance benefits under the Plan. Id. On December 10, 1992, Unocal's legal department replied to the letter, enclosing another Claim Form and notifying King's attorney that participation in the Plan was conditioned upon the execution of a release by King. Unocal requested that King's attorney clarify whether King intended to withdraw his release and go forward with his discrimination suit, in which case he would not be entitled to receive severance benefits under the Plan. Unocal received no response.

One year after bringing his discrimination and retaliation claims against Unocal, King commenced the present suit against Unocal to recover severance benefits. Unocal moved for summary judgment on the grounds that: (1) King's failure to raise his ERISA claim in the first lawsuit precludes this second suit under the doctrine of res judicata and (2) King's failure to execute a release of his claims against Unocal, as required by the Plan as a condition for receiving benefits, precludes his recovery of benefits. Because we reverse on the basis of res judicata, we do need to reach Unocal's contention that King is not entitled to benefits under the Plan because he failed to execute a release.

## DISCUSSION

### I.    Summary Judgment Standard

In reviewing a grant or denial of summary judgment, we apply the same standard applied by the district court under Federal Rule of Civil Procedure 56(c). May v. Parker-Abbott Transfer & Storage, Inc., 899 F.2d 1007, 1009 (10th Cir. 1990).  Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Where the facts "are not in dispute, this court must determine de novo whether the substantive law of res judicata was correctly applied."  May, 899 F.2d at 1009.

### II.    Res Judicata

Res judicata, or claim preclusion, precludes a party or its privies from relitigating issues that were or could have been raised in an earlier action, provided that the earlier action proceeded to a final judgment on the merits. Lowell Staats Mining Co., Inc. v. Philadelphia Elec. Co., 878 F.2d 1271, 1274 (10th Cir. 1989) (citing Allen v. McCurry, 449 U.S. 90, 94 (1980)).  To apply the doctrine of res judicata, three elements must exist: (1) a judgment on the merits in an earlier action; (2) identity of parties or privies in the two suits; and (3) identity of the cause of action in both suits.  Satsky v. Paramount Communications, Inc., 7 F.3d 1464, 1467 (10th Cir. 1993); Lowell Staats Mining Co., 878 F.2d at 1274.

In the present suit, the parties have not changed from King I, and the first suit proceeded to a judgment on the merits. Therefore, the sole issue before us is whether King's ERISA claim arises from the same "cause of action" as his earlier discrimination and retaliation claims. If so, this second suit is barred.

In Petromanagement Corp. v. Acme-Thomas Joint Venture, 835 F.2d 1329, 1335 (10th Cir.1988), this circuit adopted the transactional approach of the Restatement (Second) of Judgments to determine what constitutes a "cause of action" for res judicata purposes. The "transactional" approach provides that:

> [A] final judgment extinguishes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose. What constitutes a "transaction" or a "series" is to be determined pragmatically considering whether the facts are related in time, space, origin, or motivation, and whether they form a convenient trial unit.

Lowell Staats Mining Co., 878 F.2d at 1274 (citing Petromanagement Corp., 835 F.2d at 1335, and Restatement (Second) of Judgments § 24 (1982)).

King argues that his claims in the two suits arise from separate "transactions" because the first suit involved his termination and Unocal's conduct leading up to the termination, while the second suit involves Unocal's failure to pay severance benefits and its conduct after the termination. We disagree. King's claims are one for the purposes of res judicata because Unocal's decision to terminate King's employment and its decision to refuse to pay

severance benefits are part of a "series of connected transactions." After King was discharged, Unocal gave King the option of receiving severance benefits or suing for discrimination. King chose to sue, and Unocal concomitantly refused to pay severance benefits. Although the termination and later denial of benefits are separate factual events, they are not unrelated transactions. Rather, both occurred during the period of time from September 11 to December 10, 1992, involved actions by Unocal officials, and arose as a result of King's termination. Further, King's two suits have a substantial overlap of related facts because King's failure to execute the required release and his decision to bring the first suit formed the basis for Unocal's ultimate decision to deny King's claim for severance benefits. Thus, King's various claims, if brought together, would form a convenient trial unit. Finally, King was aware of Unocal's denial of benefits at the time he commenced his first suit and, in the interests of efficiency and fairness, should have brought his ERISA claim in the previous lawsuit. His failure to do so bars this second suit.

We have previously held that an employee's prior claim for unpaid overtime compensation bars her later claims for age discrimination and denial of equal pay. Clark v. Haas Group, Inc., 953 F.2d 1235, 1239 (10th Cir. 1992). In Clark, an employee sued her former employer to recover unpaid overtime compensation under the Fair Labor Standards Act, 29 U.S.C. §216(b). Id. at

- 7 -

1236. After the parties filed a stipulated motion to dismiss and the court entered an order dismissing the action with prejudice, the employee filed a second lawsuit, alleging that her employer discriminated against her because of her age in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621-634, and deprived her of equal pay in violation of the Equal Pay Act, 29 U.S.C. § 206(d). Id. The district court held that res judicata did not bar the second suit because "the facts needed to prove a charge of discrimination are very different in motivation and origin from the facts needed to prove the overtime compensation charge." Id. at 1237. On appeal, we rejected the district court's restrictive interpretation of the Restatement's transaction test and reversed:

> Notwithstanding the district court's finding to the contrary, we must hold that the two actions were "related in time, space, origin, or motivation." Furthermore, the "claims" asserted in the two cases formed "a convenient trial unit," particularly in that the various "claims" and legal theories were predicated exclusively on [the plaintiff's] employment relationship with [her employer].

Id. at 1239 (citations omitted); see also Robinson v. Volkswagenwerk AG, 56 F.3d 1268, 1275 (10th Cir. 1995) (plaintiff's initial products liability claim barred later claims of negligence and breach of warranty arising out of the same auto accident).

King argues that Herrmann v. Cencom Cable Associates, Inc., 999 F.2d 223 (7th Cir. 1993), is more closely analogous to the present situation and demonstrates that King's first suit does not bar his later claim for benefits. Like

this case, Herrmann involved two successive actions by an employee against her former employer. In the first suit, the employee brought a claim under the continuation of medical benefits provision (COBRA) of ERISA, 29 U.S.C. §§ 1161-68, and in the second, she brought a claim for gender discrimination under Title VII, 42 U.S.C. §§ 2000e to 2000e-17. Id. at 224. The court held that because the employee's claims were based on different "factual allegations," id. at 226, and had little or no "factual overlap," id. at 227, the two claims were not so related for purposes of res judicata as to bar the employee from bringing her Title VII claim in a second suit:

> In the present case . . . only one fact on which the two claims are based is the same—that the plaintiff was terminated. The other facts on which the Title VII claim is based concern the conduct of the defendant leading up to the plaintiff's discharge, while the other facts on which the COBRA claim is based concern the processing of her request for continued benefits after she was discharged.

Id. at 227.

Unocal, on the other hand, likens the present situation to Prochotsky v. Baker & McKenzie, 996 F.2d 333 (7th Cir. 1992). In Prochotsky, an employee brought a claim alleging that her discharge resulted from her former employer's desire to deprive her of employee benefits in violation of ERISA, 29 U.S.C. § 1140. Id. at 333. After that claim was dismissed, the employee brought a second claim alleging that her discharge was motivated by discrimination based on her age, national origin, and physical disability in violation of Title VII, 42

U.S.C. § 2000e to 2000e-17. Id. On appeal, the court rejected the employee's contention that res judicata did not apply because the parties were litigating "a different issue." Id. at 334-35. The court held that the employee's claims were one for the purposes of res judicata because both actions arose from the employee's discharge and required a determination of the propriety of the employer's motivation in discharging the employee. Id. at 335; see also Bryzostowski v. Laidlaw Waste Systems, Inc., 49 F.3d 337, 339 (7th Cir. 1995) (plaintiff's initial breach of employment contract claim barred a later age discrimination claim because "resolution of both complaints revolves around the issue of whether [the employer] complied with its legal obligations—arising out of either a contract or a federal statute—when it discharged [the employee]").

In our view, neither Prochotsky nor Herrmann is particularly helpful because each lies at an extreme: Prochotsky involved claims with a nearly complete factual overlap while Herrmann involved claims with "a complete or nearly complete lack of overlap." Herrmann, 999 F.2d at 226. Our case lies somewhere in between. Thus, we must ask whether the factual events giving rise to King's various claims are so related in "time, space, origin, or motivation" as to require King to bring his claims in one lawsuit. We conclude that they are.

We recognize that King's claims are not based on the "same factual allegations," Herrmann, 999 F.2d at 226 ("[W]e suggest that two claims are one

for the purposes of res judicata if they are based on the same, or nearly the same, factual allegations."). Nevertheless, that formulation of the Restatement's "transaction" test is significantly narrower than the requirement that two claims arise from the same "series of connected transactions." Clark, 953 F.2d at 1238. Although the factual events giving rise to King's two actions are separate, they form a "series of connected transactions" and thus are sufficiently related to require King to bring all his claims in one lawsuit. In particular, King's claims are related because his decision to withdraw the release and proceed with his discrimination and retaliation claims provided the basis for Unocal's ultimate refusal to pay him severance benefits, which is the subject of this second suit.

Moreover, unlike Herrmann, where it was unclear whether the employee could have brought her later Title VII claim in the first suit, id. at 224-25, King clearly knew of Unocal's decision to deny him benefits at the time he commenced his first lawsuit. Thus, King could have brought all his claims in one suit. To allow King's second suit to proceed as framed would allow precisely the sort of piecemeal litigation, unnecessary expense, and waste of judicial resources that the doctrine of res judicata is designed to prevent. See May, 899 F.2d at 1009.

## CONCLUSION

For the foregoing reasons, the order of the district court granting summary

- 11 -

judgment in favor of King is REVERSED and the case is REMANDED for entry of summary judgment in favor of Unocal.