Derrick Lee URBAN, a Minor. Child and an Incapacitated Person, By and Through his Natural Father and Mother, Natural Guardians, and Next Friends, David D. Urban and Rosalind Marie Urban, Plaintiff,

v.

William T. KING, M.D., Jay S. Schukman, M.D., and Carolyn Ann Wilson, Defendants.

No. CIV.A. 95–1438–MLB.

United States District Court, D. Kansas.

Feb. 12, 1998.

Michael S. Holland, Russell, KS, for plaintiffs.

Eldon L. Boisseau, David W. Steed, Anne M. Hull, Turner & Boisseau, Chartered, Wichita, KS, Brian C. Wright, Turner &

Boisseau, Chartered, Great Bend, KS, for William T. King.

Michael R. O'Neal, Gilliland & Hayes, P.A., Hutchinson, KS, for Jay S. Schukman, MD.

Steven C. Day, Woodard, Blaylock, Hernandez, Roth & Day, Wichita, KS, for Carolyn Ann Wilson.

## MEMORANDUM AND ORDER

BELOT, District Judge.

Before the court is Defendant Carolyn Ann Wilson's motion for summary judgment (Doc. 30). The parties have filed several other documents in support or opposition (Docs. 31, 42 & 45). For the reasons stated below, the court denies the motion.

### I. NATURE OF THE CASE

This diversity action is a medical malpractice case relating to prenatal care provided by defendants to Rosalind Marie Urban on November 24, 1989. The court has jurisdiction under 28 U.S.C. § 1332(a).

### II. STANDARDS FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) directs the entry of summary judgment in favor of a party who "shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the initial burden of demonstrating the absence of genuine issues of material fact. *Martin v. Nannie & the Newborns, Inc.,* 3 F.3d 1410, 1414 (10th Cir. 1993). "A fact is 'material' only if it might affect the outcome of the suit under the governing law." *MacDonald v. Delta Air Lines, Inc.,* 94 F.3d 1437, 1440 (10th Cir. 1996) (quoting other sources). In appropriate circumstances, the movant may be able to meet this burden by informing the court of the basis for its motion, *Martin,* 3 F.3d at 1414, but without supporting "its motion with affidavits or other similar materials negating the opponent's claim," *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265, 274 (1986).

Once the moving party properly supports its motion, the non-moving party "may not rest upon the mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Muck v. United States,* 3 F.3d 1378, 1380 (10th Cir.1993). "Entry of summary judgment is mandated, after an adequate time for discovery and upon motion, against a party who 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.' " *Aldrich Enters., Inc. v. United States,* 938 F.2d 1134, 1138 (10th Cir.1991) (quoting *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552, 91 L.Ed.2d at 273).

Summary judgment proceedings aim "to isolate and dispose of factually unsupported claims or defenses." *Celotex,* 477 U.S. at 323–24, 106 S.Ct. at 2553, 91 L.Ed.2d at 274. The court's task is to determine "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202, 213 (1986). This requires the court to view the evidence in the light most favorable to the non-moving party. *See Thrasher v. B & B Chem. Co.,* 2 F.3d 995, 996 (10th Cir. 1993). Summary judgment is inappropriate if there is sufficient evidence on which a trier of fact could reasonably find for the non-moving party. *Prenalta Corp. v. Colorado Interstate Gas Co.,* 944 F.2d 677, 684 (1991). These same standards must be applied individually to each motion for summary judgment facing the court. *Howell v. United States,* No. 95–5093, 1996 WL 153890, at *3, 81 F.3d 172 (10th Cir. Apr.3, 1996) (unpublished).

### III. SUMMARY OF FACTS

The court recites only those facts that have been admitted, uncontroverted, controverted without factual or legal basis, or controverted but supported by Urban's evidence. Inferences reasonably supported by these facts shall be drawn in the analysis section. The court has numbered the paragraphs to correspond to the fact paragraphs of the parties. When the court has included no citation to

the record, it has relied upon the citations used by the parties in their briefs.

### Procedural History of Prior Litigation

1. On August 22, 1991, Urban and his parents filed an action in this court entitled *Urban, et al. v. King, et al.*, 783 F.Supp. 560 (D.Kan.1992). The Urbans brought the suit against King, Schukman, Wilson's employer (Central Kansas Medical Center ("CKMC")), and several others who provided care to Urban's mother during the same pregnancy, labor, and delivery at issue in this case. Jurisdiction was predicated solely upon 42 U.S.C. § 1395dd, also known as the Emergency Medical Treatment and Active Labor Act ("EMTALA").

2. According to the Complaint in the earlier litigation (Doc. 32, Ex. A), the Urbans asserted claims against CKMC under two theories. First, they alleged that CKMC violated its statutory duties under 42 U.S.C. § 1395dd. Second, they asserted state law claims of medical and hospital malpractice against CKMC based on the negligent conduct of staff employees, principally Wilson. They asserted no claims directly against Wilson, however. The Urbans' claims against Jay S. Schukman, M.D., were based on violations of 42 U.S.C. § 1395dd, medical negligence, and vicarious liability for the negligence of others under his control.

3. Schukman filed a Rule 12(b)(1) motion to dismiss for failure to state a claim upon which relief may be granted. *Urban v. King*, 783 F.Supp. 560, 561 (D.Kan.1992). Judge Van Bebber agreed with Schukman's contention that EMTALA created liability solely against hospitals and not against staff physicians, granting Schukman's motion on that point. *Id.* at 563. The court then decided to exercise supplemental jurisdiction over the Urbans' remaining claims against Schukman, "because of the nature of the alleged injuries, that plaintiffs would be expected to try all of their claims together. When several causes combine to cause a harm, as they are alleged to have done here, the causes are part of the same controversy, and the court finds that supplemental jurisdiction is properly exercised." *Id.*

4. The Urbans did not include their state law medical malpractice claims against CKMC in the final pretrial order (Doc. 32, Ex. B). From that point forward, they proceeded against CKMC only under their federal EMTALA claims. The record does not reflect why the state claims against CKMC were not carried forward into the pretrial order. The Urbans' state law claims against individual physicians, however, did appear in the pretrial order.

5. On July 15, 1993, CKMC filed a motion for summary judgment and a supporting brief. The district court granted the motion on September 29, 1993, upon a finding that the evidence did not substantiate that CKMC violated the EMTALA. *Urban v. King*, 834 F.Supp. 1328, 1334 (D.Kan.1993). Because the only claims remaining in the case were based on violations of state law, and in the absence of an independent basis for subject matter jurisdiction, the court declined to exercise supplemental jurisdiction and dismissed the remaining claims without prejudice. *Id.* The Tenth Circuit affirmed Judge Van Bebber's decision. 43 F.3d 523, 527 (1994).

### Substantive History of Prior Litigation

7–35. For this portion of the facts, Wilson repeats verbatim the statement of facts submitted by CKMC in support of its summary judgment motion in the previous case. Likewise, Urban repeats verbatim the responses made by him and his parents to CKMC's statement of facts. As neither party appealed Judge Van Bebber's resolution of the factual disputes, this court hereby adopts Judge Van Bebber's statement of the facts.

Mrs. Urban was treated during her pregnancy by William T. King, M.D. Dr. King practices at Great Bend, Kansas, and limits his practice to the field of obstetrics and gynecology.

Pursuant to Dr. King's direction, Mrs. Urban had a number of non-stress tests performed at CKMC during her pregnancy. According to Mrs. Urban, the non-stress tests were done under a schedule provided to her by Dr. King. She personally made the appointments by calling the obstetrics department at CKMC. The tests were conducted at the hospital's obstetrics department where Mrs. Urban would report. The tests were performed on an out-

**1254**

patient basis, and the hospital's only role was to perform the tests.

The events relating to the plaintiffs' cause of action against defendant CKMC began with a non-stress test which was performed on November 24, 1989. The staff nurse who conducted that test [Carolyn Ann Wilson] interpreted the results as non-reactive as to both twins, meaning that there was no fetal movement. The nurse worked with Mrs. Urban for an hour trying to get a positive result from this test. The nurse then called defendant Dr. Schukman at his residence (Dr. King was out of town) and reported the non-reactive non-stress test. She also reported to Dr. Schukman that fetal heart tones were in the 150's for both twins and that Mrs. Urban's vital signs were normal. Dr. Schukman ordered that Mrs. Urban return the next morning to have the non-stress test repeated. Mrs. Urban then left the hospital at approximately 8:00 p.m.

The nurse [Wilson] has testified by deposition that she was not alarmed by her inability to confirm fetal movement because of the range of the heart beats for both twins. She saw no evidence of fetal distress. Mrs. Urban testified that the nurse said nothing which led her to believe that there was anything unusual or abnormal about the non-stress test. Dr. Schukman testified that nothing the nurse told him led him to believe that there was a problem and that it was not unusual to order a non-stress test to be repeated in such a situation.

Mrs. Urban returned to the hospital on the morning of November 25, 1989, for the repeat test. The nurse who conducted that test [Janetta Deutsch] became concerned when she could not get a clear tracing of one of the twins. She concluded that something was wrong and called defendant Dr. Gateno, an obstetrician and gynecologist who works in the Great Bend area. Dr. Gateno arrived at the hospital five minutes later and ordered a bio-physical profile. The results showed an absence of fetal heart rate motion on one of the twins, no movement for either baby, only a small amount of amniotic fluid, and poor tone.

Dr. Gateno explained the situation to Mrs. Urban and gave her the choice of staying in CKMC and delivering by Caesarian section or going to Wesley Regional Medical Center in Wichita. He explained to her that a neonatologist would be available to care for the living twin in Wichita, and that the living twin would have a better chance in Wichita than at CKMC since CKMC is a limited hospital.

Mrs. Urban wanted to talk to her family before deciding whether to go to Wichita and finally decided to go to Wichita at 4:00 p.m. Dr. Gateno testified that he concurred in this decision because he believed it would be in the best interests of the infant. Mrs. Urban was taken to Wichita by ambulance, a two hour trip. She was not in labor prior to leaving CKMC and the ambulance trip was uneventful.

Mrs. Urban arrived at Wesley at 7:05 p.m. and the Cesarian section was performed at 9:41 p.m. The surviving twin, plaintiff Derrick Urban, suffers from serious and permanent central nervous system injury which has resulted in extensive physical and mental impairments.

834 F.Supp. at 1330–31.

32 & 33. The relevant portions of Fact ¶¶ 32 and 33 deserve specific mention because of their relation to the central issues of Urban's claim against Wilson.

The Urbans identified Merry Cathryn Beeson, a registered nurse, as an expert witness against CKMC. The parties deposed Ms. Beeson before the Urbans dropped their medical malpractice claim against CKMC. (Fact ¶ 32.) Among other things, Beeson testified that Wilson breached the standard of care applicable to nurses by sending Mrs. Urban home on the evening of November 24, despite the fact that Dr. Schukman directed her to do so. (Depo. of Beeson, Aug. 29, 1992, p. 120, Doc. 32 at A–154.)

*Substantive Claims in the Instant Case*

36. After termination of the prior case, plaintiffs moved out of state. They initiated this lawsuit on October 13, 1995, asserting diversity jurisdiction. Urban's complaint revolves around the same transactions and occurrences as the prior lawsuit and Urban

seeks damages for the same alleged injury. (Fact ¶ 36.)

37. Unlike the prior case, Urban asserts a negligence claim directly against Wilson as a named defendant. Urban claims that Wilson breached the applicable standard of care in seventeen distinct ways. Each of these alleged breaches occurred on November 24, 1989, and relate to the decision ultimately made by Schukman to discharge Mrs. Urban following the non-reactive non-stress test.

*Urban's Supplemental Facts*

Without going into specific detail, Urban alleges facts to support his argument that Wilson was Schukman's agent during the critical events. Resolution of these issues is unnecessary at this time.

## IV. ANALYSIS

█ Wilson's sole argument for summary judgment is that the decision in favor of CKMC in Case No. 91–2317 precludes this action against Wilson under the doctrine of res judicata (Docs. 31 & 45). Although the Tenth Circuit has not definitively decided whether federal law governs the application of res judicata in diversity cases, the court has given indications that it does. *See Augustine v. Adams*, 169 F.R.D. 664, 667–68 (D.Kan.1996) (Van Bebber, J.); *see also Phillips USA, Inc. v. Allflex USA, Inc.*, 77 F.3d 354, 359 (10th Cir.1996).

█ The Tenth Circuit recently restated the law of res judicata:

Res judicata, or claim preclusion, precludes a party or its privies from relitigating issues that were or could have been raised in an earlier action, provided that the earlier action proceeded to a final judgment on the merits. To apply the doctrine of res judicata, three elements must exist: (1) a judgment on the merits in an earlier action; (2) identity of parties or privies in the two suits; and (3) identity of the cause of action in both suits.

*King v. Union Oil Co.*, 117 F.3d 443, 445 (10th Cir.1997) (citations omitted). The purpose of res judicata is to relieve parties of the cost and vexation of multiple lawsuits on related issues, to conserve judicial resources, to prevent inconsistent decisions, and ultimately to encourage the finality and reliability of judgments. *Satsky v. Paramount Communications, Inc.*, 7 F.3d 1464, 1467 (10th Cir.1993). Res judicata "is a rule of fundamental and substantial justice, of public policy and of private peace which should be cordially regarded and enforced by the courts...." *Hart Steel Co. v. Railroad Supply Co.*, 244 U.S. 294, 299, 37 S.Ct. 506, 507, 61 L.Ed. 1148 (1917) (internal quotations omitted).

Wilson argues that CKMC and Wilson were in privity in the first action and that Urban's claims in each suit arise out of the same transaction. Therefore, she says that if Urban's present claim against her would be barred under the doctrine of res judicata had Urban asserted the claim directly against CKMC, then res judicata bars Urban from asserting it against Wilson (Doc. 31 at 26–27, 36–38). Wilson asks the court to begin by examining the preclusive effect of the prior judgment against CKMC.

*Res Judicata as to CKMC*

At the time CKMC submitted its motion for summary judgment, the EMTALA claim was the only claim pending against it. Thus, when Judge Van Bebber granted CKMC's motion, he disposed of all of Urban's claims against CKMC. His ruling constituted a final judgment on the merits.[1] From that point forward, the doctrine of res judicata barred Urban from asserting any claim against CKMC on the same cause of action.

█ The scope of the bar depends on the definition of cause of action. For purposes of res judicata, "cause of action" means

all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose. What constitutes a "transaction" or a "series" is to be determined pragmatically considering whether the facts are related in time, space, origin, or

---

1. Wilson has not shown that a final judgment was rendered at any other time or as to any other party.

motivation, and whether they form a convenient trial unit.

*King v. Union Oil Co.,* 117 F.3d at 445 (citations omitted). The EMTALA imposes liability on a hospital if its employees direct the discharge of a patient when the hospital has actual knowledge that the patient has an emergency medical condition. *Urban v. King,* 834 F.Supp. at 1332. Urban's claim was that the hospital, acting through Wilson, discharged Urban, even though Wilson had obtained non-reactive results on the non-stress test. Urban contended that under the circumstances, the non-reactive results tentatively indicated the presence of an emergency medical condition. Thus, the "transaction" underlying Urban's claim was the care and treatment provided or not provided by the hospital and its employees to Mrs. Urban on November 24, 1989. Res judicata therefore bars Urban from bringing any claim against CKMC that is based on that care and treatment.

Urban's present claim, that Wilson negligently treated and discharged Mrs. Urban, clearly arises from the same transaction giving rise to the earlier EMTALA claim. The court agrees with Wilson that if Urban was pressing his current suit against CKMC under a theory of respondeat superior, it would be barred under the doctrine of res judicata. Whether res judicata bars this suit against Wilson, however, hinges on the issue of privity.

### *Privity Between Wilson and CKMC*

■ The critical time for assessing privity is when the final judgment was rendered. "[A] party is bound only as to matters properly raised during the period in which he is a party...." 18 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure

§ 4449 (1981). The same could be said of privies. A privy is bound only as to matters properly decided during the period when he is in privity. "[W]here a party is put out of a case by a dismissal, the judgment thereafter rendered is not conclusive upon him." *Mid–Continent Cas. Co. v. Everett,* 340 F.2d 65, 69 (10th Cir.1965). Thus, the court must determine (1) whether Wilson and CKMC were privies in the prior suit, if so, (2) for what period of time, and (3) when the relevant final judgment was entered.

■■ "Privity requires, at a minimum, a substantial identity between the issues in controversy and showing the parties in the two actions are really and substantially in interest the same." *Lowell Staats Min. Co. v. Philadelphia Elec. Co.,* 878 F.2d 1271, 1275 (10th Cir.1989). For present purposes, so long as the vicarious liability claim predicated on Wilson's negligence was in the earlier case, the court will assume, without deciding, that the requisite privity existed. *Cf. Lowell Staats Mining Company,* 878 F.2d 1271 (10th Cir.1989). *See generally* Restatement (Second) of Judgments § 51(1), (1)(a), & cmt. c (1982). *But see Hayles v. Randall Motor Co.,* 455 F.2d 169, 173–74 (10th Cir.1971).[2] After all, CKMC's vicarious liability was merely derivative of Wilson's negligence.

After the vicarious liability claim was dropped however, any privity that existed between CKMC and Wilson disappeared. The EMTALA imposes liability only on hospitals, not on individuals. *Urban v. King,* 783 F.Supp. at 563. Thus, there was no derivative liability relationship between CKMC and Wilson on that claim. Additionally, Wilson's negligence, if any, was irrelevant to whether CKMC violated the EMTA-

---

**2.** *Hayles* arose out of a four truck collision. 455 F.2d at 170–71. In relevant part, a claim was made against the owner of one of the trucks, named Sanders, based on Sanders' vicarious liability for the negligence of his employee, Hayles, who was driving the truck. The jury found Sanders liable. *Id.* at 171–72. Later, Hayles filed an action against Sanders' co-defendants for personal injuries Hayles sustained in the collision. *Id.* at 171. Randall Company, one of the co-defendants, moved to dismiss Hayles' action, arguing that the prior case's jury finding that Hayles was negligent precluded the subsequent action. *Id.* at 172–73. The district court agreed.

On appeal, the Tenth Circuit ruled that the Oklahoma Supreme Court would hold to the contrary. "Such a holding [by the supreme court reversing the district court and allowing the second suit] would be in accord with the great weight of authority in other jurisdictions, the courts of which have passed on the question." 455 F.2d at 174. The court said that Hayles was not a party to the prior action, was not in privity with Sanders, his employer, and was not represented by Sanders. "He has never had an opportunity to defend the allegation that he was negligent." *Id.*

LA. There is simply no basis for a finding that there was a substantial identity of interest between CKMC and Wilson after the vicarious liability claim was dropped. By the time the court entered the July 19, 1993 pretrial order, the Urbans were no longer asserting their vicarious liability claim.

The judgment that Wilson asserts precludes the present action is the September 29, 1993 summary judgment ruling.[3] Wilson was no longer in privity with CKMC on that date. Therefore, the judgment has no preclusive effect on Urban's claims against Wilson. Had Urban filed a motion to amend the pleadings or the pretrial order, theoretically he could have obtained permission to add Wilson as a party to that suit.[4]

Wilson identified thirteen cases in which various courts have held that an employer and employee or principal and agent are in privity with respect to suits against either predicated on the negligence of the employee or agent (Doc. 31 at 36–37). *See also deLeon v. Slear*, 328 Md. 569, 616 A.2d 380, 386–87 (1992) (citing additional cases). This court agrees with the general statement of law. None of those cases, however, involved the present situation where the plaintiff in the first case voluntarily withdrew his claim based on the employee's negligence, and proceeded solely on a theory applicable only to the party sued. For that reason, the cases have no bearing on this court's analysis.

### Miscellaneous Matters

The foregoing analysis is dispositive of the motion. For that reason, the court has not discussed many of the parties' arguments, even though it has carefully reviewed them. Frankly, the court believes the parties talked around the critical issue, which was privity.

Whether or not Urban consciously recognized it, the unfairness underlying his argument that he has never had a full and fair opportunity to litigate his negligence claim against Wilson stems from the lack of privity between CKMC and Wilson at the time judgment was entered. On the other hand and perhaps as a result of Urban's inability to

focus on the critical issue, most of Wilson's counter-arguments were off target. Wilson responded to Urban's arguments as though CKMC was the defendant (rather than Wilson) and as though the issue was the res judicata effect of the prior judgment against CKMC. Wilson therefore missed the essence of Urban's complaint.

Although unnecessary to the resolution of the case, the court wishes to comment on three specific points made in Wilson's reply brief (Doc. 45), and to make a final observation. First, while the court recognizes the authority of *Casto v. Arkansas–Louisiana Gas Co.*, 597 F.2d 1323 (10th Cir.1979), the court believes that Wilson misapprehends its application to this case. Wilson cited *Casto* for the proposition that res judicata precludes the litigation of claims abandoned in a prior case (Doc. 45 at 10–11). This court agrees with *Casto*'s prohibition on claim-splitting. In *Casto*, however, the defendant in the first case was the defendant in the second case. The defendant was in the first case from beginning to end, and therefore during the critical period between the dismissal of the one claim and the entry of final judgment on the other. In this case, Urban dropped the only claim implicating Wilson long before any final judgment was rendered as to any party. This, of course, is the privity problem. Additionally, there is no indication in the record that the Urbans intended to evade the one trial rule by claim-splitting. In short, *Casto* cannot save Wilson's motion.

The second point meriting comment is Wilson's discussion of *Shaver v. F.W. Woolworth Co.*, 840 F.2d 1361 (7th Cir.1988). In *Shaver*, the plaintiff brought suit in federal court on an ADEA claim and pendent state claims, under federal question and civil rights jurisdiction. Diversity of citizenship in fact existed, but the plaintiff failed to allege it. The federal district court granted summary judgment on the ADEA claim and then declined to exercise pendent jurisdiction over the state claims. Subsequently, the plaintiff filed his state law claims in state court.

3. No other judgments appear of record.

4. Because a final pretrial order had been entered, Urban would have had to show that the

amendment was necessary to prevent manifest injustice. Nevertheless, it was theoretically possible.

**1258**

The defendant removed the second case to federal court under diversity jurisdiction. The federal district court granted summary judgment on substantive grounds. The Seventh Circuit affirmed, but on the basis of res judicata. It held that because a court has no discretion but to exercise diversity jurisdiction if it exists, res judicata bars subsequent litigation of state claims when (1) the basis for the court's subject matter jurisdiction, as alleged, terminates, for example, by dispositive motion, (2) the court declines to exercise supplemental jurisdiction over the state law claims, and (3) the plaintiff fails to draw the court's attention to the existence of diversity jurisdiction. This is a variation of the one trial rule and the prohibition against claim-splitting. It confirms that a plaintiff has an affirmative duty to bring and to resolve all claims related to the same transaction in a single adjudication.

*Shaver* is inapplicable here for two reasons. As to *Shaver*'s specific holding, there is no record support for a finding that diversity jurisdiction existed in case number 91–2317. Additionally, Wilson's larger point, that this case is barred by the one trial rule and the prohibition on claim splitting, fails because no judgment was ever rendered as to Wilson (or her privy) specifically or on the cause of action generally.

The third cause for comment relates to Wilson's discussion of the rule requiring plaintiffs to present their state law claims to the federal court (Doc. 13–14 (citing *Harper Plastics v. Amoco Chemicals Corp.*, 657 F.2d 939 (7th Cir.1981))). Again, this is a manifestation of the one trial rule and the prohibition on claim-splitting, previously discussed. Within that discussion Wilson makes the point that plaintiffs cannot force subsequent courts to speculate on whether the earlier court would have exercised supplemental jurisdiction by failing to present their state claims in the first instance. Agreed. Nevertheless, Wilson's suggestion that Judge Van Bebber would have exercised supplemental jurisdiction over plaintiffs' state law claims against CKMC had they been retained strikes the court as unrealistic. Judge Van Bebber declined to exercise jurisdiction over state law negligence claims against every other party, and the negligence claims against CKMC were part and parcel of the

same transaction. As he wrote in his opinion, "[state law claims] may more properly be adjudicated by a state court." 834 F.Supp. at 1334.

Finally, the court notes that Wilson's arguments fail to recognize that under Kansas law a plaintiff has the right to forego suit against any party. *Ellis v. Union Pac. R.R. Co.*, 231 Kan. 182, 192, 643 P.2d 158, *aff'd on reh'g*, 232 Kan. 194, 653 P.2d 816 (1982) ("The plaintiff may choose to forego any recovery from other tortfeasors"). He is the master of his case. There was no obligation upon Urban to retain his claim against CKMC, predicated on Wilson's negligence, whether or not he intended to sue Wilson individually.

## V. CONCLUSION

For the reasons stated above, Wilson's motion for summary judgment (Doc. 30) is denied.

A motion for reconsideration is neither invited nor encouraged. Any motion for reconsideration must comply with Rule 7.3 of this court and the standards set out in *Comeau v. Rupp*, 810 F.Supp. 1172, 1174 (D.Kan.1992). They must be filed by Monday, February 23. The motion may not exceed four pages in length, including supporting arguments and authorities, regardless of the number of points raised. All responses must be filed by Monday, March 2. Responses shall be limited to three pages each. No replies may be filed. Motions for extension of these time periods will be viewed with disfavor. The filing of such a motion does not relieve the party of its obligation to meet the relevant deadline, even if the motion is not ruled upon prior to the expiration of the deadline.

IT IS SO ORDERED.