**Charles L. SMITH, Plaintiff,**

v.

**AMERITECH, Ameritech Benefit Plan Committee and Ameritech Employees' Benefit Committee, Defendants.**

No. 99–74923.

United States District Court,
E.D. Michigan.
Southern Division.

March 3, 2000.

Alan B. Posner, Kelman, Loria, Detroit, MI, Richard G. Bogdanski, Conway & Mossner, John J. Conway, Conway & Mossner, Bloomfield Hills, MI, for Charles L. Smith, plaintiffs.

Lisa M. Bruno, Ameritech Legal Department, Albert Calille, Ameritech, Detroit, MI, for Ameritech, Ameritech Benefit Plan Committee, Ameritech Employees Benefit Committee, defendants.

## OPINION & ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

EDMUNDS, District Judge.

This matter comes before the Court on Defendants' motion for summary judgment. Defendants argue that Plaintiff's complaint in this action is barred by the doctrine of res judicata. In Michigan, a second lawsuit is barred where (1) the prior action was decided on the merits; (2) the issues raised in the second case either were resolved in the first case, or could have been resolved in the first case; and (3) both actions involve the same parties or their privies. *Dart v. Dart*, 460 Mich. 573, 597 N.W.2d 82, 88 (1999). As discussed below, the prior action was decided on the merits and both actions involve the same parties or their privies. However, the issues raised in the second case were not

resolved in the first case, nor could they have been resolved. The motion for summary judgment is DENIED.

## I. Facts

Plaintiff, Charles Smith, filed this five count Complaint under ERISA § 502(e), 29 U.S.C. § 1132, *et seq.*, alleging that Defendants Ameritech, Ameritech Benefit Plan Committee ("ABPC") and Ameritech Employees' Benefit Committee ("AEBC") breached various terms of his employee pension and disability plan. Plaintiff was employed by Michigan Bell Telephone Co. ("Michigan Bell") for twenty-seven years when Michigan Bell considered him to have resigned on January 22, 1996.

Plaintiff filed a previous action in Wayne County Circuit Court on January 10, 1997, alleging race, age, and handicap discrimination, as well as the intentional infliction of emotional distress as a result of his termination. Following discovery, the Defendants' motion for summary disposition was granted by the state court judge on May 19, 1998.[1]

### A. Plaintiff's Termination and Denial of Sickness Disability Benefits

Plaintiff started working at Michigan Bell on March 25, 1968. In February 1995, he was a manager. Toward the end of that month, Plaintiff took several days off due to back pain. Under the Sickness and Accident Disability Benefit Plan ("SADB") which applied to Plaintiff, after seven consecutive days of absence, SADB benefits commence. Plaintiff's benefits began on March 2, 1995.

In order to demonstrate entitlement to SADB benefits, Plaintiff was required to provide medical documentation establishing his total disability. Plaintiff received SADB benefits until April 13, 1995. Plaintiff was subsequently informed that his benefits were terminated because he did

---

1. Plaintiff subsequently filed an untimely notice of appeal which the Michigan court of appeals dismissed. Plaintiff filed a delayed application for leave to appeal in April of 1999. The application was denied on October 15, 1998.

not provide adequate objective medical documentation establishing that he was disabled. Plaintiff appealed this decision, and on December 15, 1995, the AEBC informed him that his appeal was denied and that their decision was final. (Defs' Exb. G).

On December 21, 1995, Plaintiff's supervisor sent him a letter indicating that he should return to work and meet with her in Illinois on January 2, 1996. The letter also indicated that if Plaintiff did not return to work, Ameritech would accept his resignation as of that date. Plaintiff did not return to work on January 2. He later claimed that he did not receive the correspondence directing him to return to work until January 4, 1996.

Ameritech gave Plaintiff another chance to return to work. They informed him via letter dated January 16, 1996 that this was his final opportunity to return to work and to meet with his supervisor for a mandatory meeting in Illinois on January 22, 1996. The letter indicated that if Plaintiff did not return to work, he would be deemed to have voluntarily resigned. Plaintiff did not report to work and therefore, Ameritech considered him to have resigned on January 22, 1996.

Subsequently, on March 6, 1996, Plaintiff wrote to his supervisor, indicating that his doctor stated that he could return to work in a limited capacity. He indicated his intention to return to work on March 11, 1996. Plaintiff reported to work on the 11th without directly contacting his supervisor in Illinois. He reported to work again on March 12, 1996 and contacted his supervisor in order to ascertain what duties he should be performing. Plaintiff's supervisor, unaware that he had returned to work, informed him that he was considered to have resigned on January 22, 1996.

**B. Pension Calculation**

Plaintiff wrote to the Ameritech Benefit Plan Administrator on April 9, 1996, disputing the amount of his pension. He stated in his letter that he disagreed with his termination date of January 22, 1996, which Defendants used in calculating his benefits. He also indicated that it was his position that Defendant's calculation was in violation of ERISA. On May 24, 1996, the AEBC denied Plaintiff's claim for recalculation. Plaintiff appealed. On November 7, 1996, his appeal was denied and he was informed that the decision was final. (Pl's Exb. 6, attached to Pl's Compl.)

**C. Recalculation Based on Unused Vacation Time**

In October of 1998, Plaintiff sent Ameritech a letter requesting that his termination date/pension benefit be recalculated based on ten weeks of unused vacation time. (Pl's Exb. 6) Although Plaintiff had been compensated for unused vacation time, Ameritech did not account for the unused vacation time in calculating his pension benefit. Plaintiff, in his letter states:

> The money was paid to me but the people who calculate service pensions were not notified [of my eligibility for ten weeks of vacation].... The addition of the ten weeks vacation takes me far beyond my 50th birthday and 28th year of service. My date of birth is February 6, 1946 and my net credit service date is March 25, 1968. The date originally used to calculate my services was January 22, 1996 which was 15 days before my birthday.
>
> . . .
>
> As you know, Ameritech employees have traditionally been granted the request that their service be calculated as of the date of any vacation they have coming ends.

*Id.*

His request for recalculation was denied on December 16, 1998. Plaintiff appealed. In 1999, Ameritech granted Plaintiff a review with respect to his pension calculation request, determining that he had "raised issues that were not previously raised by

880

[him] in his prior appeal." (Pl's Compl. Exb. 12 at p.4) On June 10, 1999, Defendants denied Plaintiff's appeal with respect to recalculation based on unused vacation time. (Pl's Exb. 8).

With regard to Plaintiff's request for recalculation based on his used vacation time, it is important to note that Plaintiff claims, at the time that he filed his initial lawsuit, that he was not aware of Ameritech's policy of adding unused vacation time in the calculation of pension dates and benefits. The Court's review of the Ameritech Summary Plan Description reveals that this policy is not mentioned in the plan. Without knowledge of this potential benefit, Plaintiff could not have raised it in the prior action.

## II. Standard for Summary Judgment

■ Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R. Civ. P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). After adequate time for discovery and upon motion, Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

■ The movant has an initial burden of showing "the absence of a genuine issue of material fact." *Celotex,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265. Once the movant meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538

(1986). To demonstrate a genuine issue, the non-movant must present sufficient evidence upon which a jury could reasonably find for the non-movant; a "scintilla of evidence" is insufficient. *Liberty Lobby,* 477 U.S. at 252, 106 S.Ct. 2505.

■ The court must believe the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *Liberty Lobby,* 477 U.S. at 255, 106 S.Ct. 2505. The inquiry is whether the evidence presented is such that a jury applying the relevant evidentiary standard could "reasonably find for either the plaintiff or the defendant." *Liberty Lobby,* 477 U.S. at 255, 106 S.Ct. 2505.

## III. Analysis

### A. Res Judicata

■ Defendants argue that the Plaintiff's Complaint is barred by the doctrine of res judicata. Res judicata is a legal doctrine created to enhance judicial efficiency by precluding the relitigation of claims that have been resolved in a prior proceeding, thereby it "protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *United States v. Stauffer Chemical Co.,* 684 F.2d 1174, 1180 (6th Cir.1982) (quoting *Montana v. U.S.,* 440 U.S. 147, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979)), *aff'd,* 464 U.S. 165, 104 S.Ct. 575, 78 L.Ed.2d 388 (1984). The doctrine likewise promotes comity between the state and federal courts. *Allen v. McCurry,* 449 U.S. 90, 96, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980).

■ In determining whether the judgment of a state court has a preclusive effect on a subsequent action or issues brought in federal court, the Full Faith and Credit Act, 28 U.S.C. § 1873, requires that the district court give the same preclusive effect to the prior state court judgment as it would have under the law of the

state whose court issued the judgment. *Migra v. Warren City School Dist. Bd. Educ.,* 465 U.S. 75, 81, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984); *Smith, Hinchman and Grylls, Assoc., Inc. v. Tassic,* 990 F.2d 256, 257 (6th Cir.1993); *see also* Full Faith and Credit Clause of U.S. CONST. ART. IV, § 1.

 Defendants claim that this action is barred by res judicata. In Michigan, res judicata bars relitigation of a claim in a subsequent action if: (1) the prior action was decided on the merits; (2) the issues raised in the second case either were resolved in the first case, or could have been resolved in the first case; and (3) both actions involve the same parties or their privies. *Dart v. Dart,* 460 Mich. 573, 597 N.W.2d 82, 88 (1999); *Smith, Hinchman,* 990 F.2d at 257–58. *See also Sloan v. City of Madison Heights,* 425 Mich. 288, 295, 389 N.W.2d 418, 422 (1986). Res judicata applies broadly and precludes relitigating not only claims identical to those already litigated but also "claims arising out of the same transaction which plaintiff could have brought, but did not." *Katt v. Dykhouse,* 983 F.2d 690, 693 (6th Cir.1992) (quoting *Gose v. Monroe Auto Equip. Co.,* 409 Mich. 147, 294 N.W.2d 165, 167 (1980)); *Sprague v. Buhagiar,* 213 Mich.App. 310, 313, 539 N.W.2d 587, 589 (1995).

 In other words, res judicata applies not only to claims upon which the state court was actually required to decide to form an opinion and pronounce a judgment in its case, but also to any claim which properly belonged to the subject of· litigation, and which the parties, exercising reasonable diligence, might have brought forward at the time. *Vanderwall v. Midkiff,* 186 Mich.App. 191, 463 N.W.2d 219, 221 (1990). Accordingly, res judicata bars a subsequent suit which seeks recovery for the same injury upon which a judgment on the merits was already issued in a prior suit, notwithstanding that a different legal theory of recovery is advanced in the second suit. *Silcox v. United Trucking Service Inc.,* 687 F.2d 848, 852 (6th Cir.1982).

As discussed below, the Plaintiff's suit is not barred.

### 1. Prior Action Decided on the Merits

 The prior action was decided on the merits. The state court judge issued an order granting the Defendants' motion for summary disposition on May 19, 1998 and the complaint was dismissed with prejudice. (Defs' Exb. D). The prior adjudication on the merits need not be a final adjudication with respect to the exact legal issue sought to be litigated here, as Plaintiff argues. The Michigan courts apply the doctrine of res judicata broadly., *Dart v. Dart,* 460 Mich. 573, 597 N.W.2d 82, 88 (1999). The doctrine bars, "not only claims already litigated, but every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not." *Id.*(citing *Gose v. Monroe Auto Equipment Co.,* 409 Mich. 147, 160–63,.294 N.W.2d 165 (1980); *Sprague v. Buhagiar,* 213 Mich.App. 310, 313, 539 N.W.2d 587 (1995)).

### 2. Same Parties or Their Privies

The prior action involved the same parties or their privies. The Plaintiff argues that this element of the test is not satisfied because the prior action was against Michigan Bell Telephone Company, and the instant action is against Ameritech, and two committees within Ameritech. Plaintiff's argument on this point is not persuasive. As Defendants' Exhibit J demonstrates, Michigan Bell and Ameritech are the same company, one is an assumed name for the other. Defs' Exb. J. *See In re Estate of Humphrey,* 141 Mich.App. 412, 434, 367 N.W.2d 873, 883 (1985)("the parties need only be substantially identical in order for res judicata to apply; that is, it applies to the *same parties or their privies." Id.* (emphasis added)).

### 3. Issues Resolved or Could Have Been Resolved

 As discussed above, res judicata bars "not only claims already litigated, but

every claim *arising from the same transaction* that the parties, exercising reasonable diligence, could have raised but did not." *Dart v. Dart,* 460 Mich. 573, 597 N.W.2d 82, 88 (1999)(emphasis added)(citing *Gose v. Monroe Auto Equipment Co.,* 409 Mich. 147, 160–63, 294 N.W.2d 165 (1980)). "[I]f an action results in a judgment on the merits, that judgment operates as an absolute bar to any subsequent action *on the same cause* between the same parties, with respect to every matter that was actually litigated in the first case, as well as to every ground of recovery that might have been presented." *Black v. Ryder/P.I.E. Nationwide, Inc.,* 15 F.3d 573, 582 (6th Cir.1994)(emphasis added).

The actual issues sought to be determined here were not actually litigated or decided in the prior action. The question becomes whether the claims could have been raised, or whether in the exercise of reasonable diligence, they should have been raised in the previous action because they arose from the same transaction. The facts and circumstances involved in the first lawsuit in this action concerned the propriety of the company's termination of Plaintiff. The issues involved whether Michigan Bell discriminated against Plaintiff based on either his race, age, or handicap, and whether Michigan Bell intentionally inflicted emotional distress upon him in connection with his termination.

The facts and circumstances underpinning Plaintiff's claims here were not the subject of the previous action. The second lawsuit involves the conduct of Ameritech and the plan administrators in calculating Plaintiff's pension and disability benefits. Whether these benefits were properly calculated has little, if anything, to do with the facts and circumstances surrounding Plaintiff's resignation/termination. Thus the claims which Plaintiff assert here, do not arise out of the same transaction as the claims in the previous suit.

When Plaintiff filed his initial lawsuit in January of 1997, he was unaware that his unused vacation time could be used to recalculate his pension benefits. Although it is not clear when he became aware of the policy, it was not until October 22, 1998 that Plaintiff wrote to request that his unused vacation time be used to recalculate his benefits. He contends he was not aware of the Ameritech's policy, and Ameritech's Summary Plan Description does not explain this option. Although his letter to Ameritech dated April 9, 1996 requests that he be compensated for his unused vacation time, it does not request recalculation of his pension on this basis. (Pl's Compl. Exb. 4). The Plaintiff could not have asked Ameritech for a benefit of which he had no knowledge.

Further, his claim for denial of benefits on this basis was not yet ripe at the time his prior lawsuit was filed. Under *Stevens v. Employer–Teamsters Joint Council No. 84 Pension Fund,* 979 F.2d 444, 451 (6th Cir.1992), a claim for ERISA benefits "does not arise until a claim for benefits has been made and formally denied." *Id.* With respect to the addition of the vacation time, Ameritech's decision was not final until June of 1999. This claim could not have been raised during the prior lawsuit.

This case is analogous to *Herrmann v. Cencom Cable Assocs., Inc.,* 999 F.2d 223 (7th Cir.1993) wherein the Seventh Circuit held that an initial lawsuit under the COBRA provision of ERISA did not bar a subsequent claim for Title VII gender discrimination where the employee's claims involved different "factual allegations" and had little or no "factual overlap" *Id.* at 226–27. The court of appeals stated:

> In the present case ... only one fact on which the two claims are based is the same—that the plaintiff was terminated. The other facts on which the Title VII claim is based concern the conduct of the defendant leading up to the plaintiff's discharge, while the other facts on which the COBRA claim is based concern the processing of her request for

continued benefits after she was discharged.

*Id.* at 227.

Although the lawsuits here were filed in reverse order, the factual underpinnings are different and Plaintiff could not have raised his claim for recalculation based on unused vacation time in the previous suit. Not only was it not ripe, he was unaware of it.

The Tenth Circuit in *King v. Union Oil Co. of California*, 117 F.3d 443 (10th Cir. 1997), considered the question of whether plaintiff's complaint for ERISA benefits was barred under the doctrine of res judicata due to his previous lawsuit alleging race and physical disability discrimination, as well as retaliation, in connection with the termination of his employment. King argued that the two lawsuits arose out of a different set of facts because the first lawsuit involved his termination and the defendant's conduct with respect to the termination, whereas the second lawsuit involved the defendant's refusal to pay severance benefits.

The Tenth Circuit concluded that the two lawsuits were "one for purposes of res judicata because Unocal's decision to determinate King's employment and its decision to refuse to pay severance benefits are part of a series of connected transactions." *Id.* at 445. The court of appeals explained that "[a]fter King was discharged, Unocal gave [him] the option of receiving severance benefits or suing for discrimination. King chose to sue, and Unocal concomitantly refused to pay severance benefits. Although the termination and the later denial of benefits are separate factual events, they are not unrelated transactions." *Id.* The court noted that both events occurred during the same period of time and both arose as a result of King's termination. Further, both lawsuits had a "substantial overlap of related facts because King's failure to execute the required release and his decision to bring the first suit formed the basis for Unocal's

ultimate decision to deny [his] claim for benefits." *Id.*

The court stressed the importance of the fact that plaintiff's claims were intertwined. The court stated:

> Although the factual events giving rise to King's two actions are separate, they form a 'series of connected transactions' and thus are sufficiently related to require King to bring all his claims in one lawsuit. *In particular, King's claims are related because his decision to withdraw the release and proceed with his discrimination and retaliation claims provided the basis for Unocal's ultimate refusal to pay him severance benefits, which is the subject of this second suit* .... [Further, the court noted that] King clearly knew of Unocal's decision to deny him benefits at the time he commenced his first lawsuit. Thus, King could have brought all his claims in one suit.

*Id.* at 447 (emphasis added).

This case is similar to, yet distinguishable from, *King*. In *King*, the employer's decision not to pay benefits was tied to plaintiff's decision to file a discrimination suit. Thus the two causes of action arose out of the same transaction. Here, the two events are not so intertwined. Further, although Plaintiff was aware that his disability and pension benefits had been "finally" denied when he filed the previous action, he was not aware that he may be entitled to extend termination/resignation date by adding on his unused vacation time. He could not have asked for relief of which he was unaware, and the Summary Plan Description did not place Plaintiff on notice of this policy.

Other cases have held that a plaintiff's second lawsuit is barred where both actions arise out of the plaintiff's termination and each involve the efficacy of the employer's decision to discharge the individual. For example, in *Prochotsky v. Baker & McKenzie*, 966 F.2d 333 (7th Cir.1992), the plaintiff sued her former employer under ERISA claiming that her discharge

was a result of her employer's desire to avoid paying her benefits. *Id.* Following the dismissal of that claim, plaintiff filed another action alleging that her discharge was based on age, national origin and physical disability discrimination in violation of Title VII. *Id.* The Second Circuit held that the second lawsuit was barred by res judicata because "both actions arose from the employees' discharge and required a determination of the propriety of the employer's motivation in discharging the employee." *Id.* at 335. Similarly, in *Brzostowski v. Laidlaw Waste Systems, Inc.,* 49 F.3d 337, 339 (7th Cir.1995) the court of appeals held that plaintiff's second lawsuit alleging age discrimination was barred by plaintiff's prior suit for breach of employment contract because "resolution of both complaints revolves around the issue of whether [the employer] complied with its legal obligations—arising out of either a contract or a federal statute—when it discharged [the employee]." *Id.*

This case is distinguishable from *Prochotsky* and *Brzostowski.* Unlike those cases, the second lawsuit here does not involve the propriety of the employer's motivation for discharging Plaintiff, nor does it question the employer's legal basis for considering Plaintiff to have resigned. The Plaintiff's complaint is not barred. *See Doe v. Allied–Signal, Inc.,* 985 F.2d 908 (7th Cir.1993)(second complaint not barred where "Doe's breach of contract and fraud claims are not new legal theories grafted onto an old set of facts, they are different claims altogether." *Id.* at 914).

## IV. Conclusion

Being fully advised in the premises, having read the pleadings, and for the reasons set forth above, the Court hereby orders as follows:

The Defendants' motion for summary judgment is DENIED.

SO ORDERED.