**F I L E D**
United States Court of Appeals
Tenth Circuit

AUG 3 1999

**PATRICK FISHER**
Clerk

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

KENNETH E. YAPP,

        Plaintiff-Appellant,

v.

EXCEL CORPORATION, a Delaware
corporation,

        Defendant-Appellee.

Nos. 98-1061
& 98-1069

---

Appeal from the United States District Court
for the District of Colorado
(D.C. Nos. 96-S-1350 and 96-1578)

---

Pamela A. Shaddock, (Bradley D. Laue and Kathleen M. Flynn with her on the
briefs), of Brega & Winters P.C., Greeley, Colorado, for Appellant.

Walter V. Siebert, (Heather Fox Vickles with him on the brief), of Sherman &
Howard L.L.C., Denver, Colorado, for Appellee.

---

Before **TACHA, HENRY,** and **MURPHY,** Circuit Judges.

---

**MURPHY**, Circuit Judge.

---

Kenneth E. Yapp appeals the judgment of the United States District Court for the District of Colorado, granting summary judgment to Excel Corporation ("Excel") on the basis of claim preclusion. In the summer of 1996, Yapp filed suit against his former employer, Excel, for overtime compensation due under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201-219. Two weeks later he filed suit against Excel alleging numerous claims for wrongful termination. After the first case was settled and an Order of Dismissal with Prejudice was entered, the district court granted Excel's motion for summary judgment in the second case on the basis of claim preclusion. Yapp's appeal is primarily a challenge to that summary judgment. This court exercises jurisdiction pursuant to 28 U.S.C. § 1291 and **AFFIRMS.**

## I. BACKGROUND

Plaintiff Kenneth E. Yapp worked in Excel's beef slaughter plant in Sterling, Colorado from 1987 until he was terminated in 1995. [Appee. Appx. 4] On June 7, 1996, Yapp sued Excel in the United States District Court for the District of Colorado for violations of the FLSA seeking unpaid overtime compensation [hereinafter "Overtime Action"]. Approximately two weeks later, Yapp sued Excel in a Colorado state court, alleging wrongful discharge premised on theories of violation of public policy, breach of employment contract,

promissory estoppel, violation of implied covenant of good faith and fair dealing, negligent misrepresentation, and multiple torts [hereinafter "Wrongful Discharge Action"]. Excel removed the Wrongful Discharge Action to the same federal district court in which the Overtime Action was pending, and then filed a motion to consolidate the two cases, arguing that "[c]onsolidation . . . will eliminate much duplication of effort and will result in decreased costs and expenses to both parties." Yapp responded in kind, arguing that consolidation would result in delay and increased costs for both parties. The district judge denied the motion, reasoning that "[p]laintiff has stated valid reasons for filing the two cases separately and separate trials will be conducive to expedition and economy."

The parties negotiated a settlement in the Overtime Action, agreeing that Excel would pay Yapp $14,000 in return for a Stipulation for Dismissal with Prejudice, signed by both parties on September 9, 1997. The district court issued an Order of Dismissal with Prejudice in the Overtime Action on September 11, 1997. Approximately two weeks after the Overtime Action was dismissed with prejudice, Excel filed motions to supplement its answer, its pending motion for summary judgment, and the final pretrial order in the Wrongful Discharge Action to include the affirmative defense of claim preclusion premised on the dismissal

of the Overtime Action. [1] Yapp resisted Excel's effort to supplement on the grounds that the parties fully understood that settlement of the Overtime Action did not extend to the Wrongful Discharge Action. Yapp relied upon language in a proposed settlement agreement [2] and a September 9, 1997, letter from Yapp's counsel to Excel's counsel, [3] both of which Yapp asserts shielded the Wrongful Discharge Action from claim preclusion flowing from the dismissal in the Overtime Action. The district court granted Excel's motion to supplement.

---

[1] Although the parties use the term "*res judicata*," for purposes of clarity, this court employs the term "claim preclusion" instead. *See Migra v. Warren City Sch. Dist. Bd. of Educ*., 465 U.S. 75, 76 n.1 (1984) (discussing why "claim preclusion" and "issue preclusion" are preferred over terms "*res judicata*" and "collateral estoppel").

[2] Paragraph D of the proposed settlement agreement stated: "Except as specifically stated herein, this Waiver and Release Agreement is not intended to release, settle, or discharge Excel from any claims, demands, causes of action, or other rights asserted in [the Wrongful Discharge Action], now pending in the United States District Court for the District of Colorado." Because Excel apparently objected to the inclusion of this language, a proposed settlement agreement was never signed. Instead, the parties accomplished the settlement by means of the Stipulation for Dismissal with Prejudice.

[3] In a letter dated September 8, 1997, Excel reiterated that the "fundamental terms of the settlement agreed upon were a payment of $14,000 in exchange for the dismissal of the case with prejudice." Yapp's counsel responded the next day with a letter which stated in part: "It is our understanding that the dismissal of [the Overtime Action] will only determine the claims set forth in [the Overtime Action]." The letter also stated, "If you have any objections to the contents of this letter, please notify me of the same no later then September 16, 1997." Excel never responded to the letter.

On October 20, 1997, Yapp filed a 60(b) motion, seeking to rescind the Stipulation for Dismissal with Prejudice and Order for Dismissal with Prejudice in the Overtime Action. Yapp argued that relief should be based upon fraud, misrepresentation, misconduct of the adverse party, breach of covenant of good faith and fair dealing, failure to achieve a meeting of the minds, mistake of law, and mutual mistake. On February 2, 1998, the district court denied Yapp's 60(b) motion. A week later, the district court granted Excel's Motion for Summary Judgement on the basis of claim preclusion.

On appeal, Yapp primarily targets the summary judgment. He also challenges the district court's order allowing Excel to amend its answer in the Wrongful Discharge Action and the district court's denial of Yapp's 60(b) motion in the Overtime Action.

## II. DISCUSSION

A. *Motion for summary judgment*

A grant or denial of summary judgment is reviewed using the same standard applied by the district court. *See King v. Union Oil Co. of California*, 117 F.3d 443, 444-45 (10th Cir. 1997). Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to

judgment as a matter of law." Fed. R. Civ. Pro. 56(c); *see also King*, 117 F.3d at 445. Issues of fact are reviewed in a light most favorable to the nonmoving party. *See Craig v. Eberly*, 164 F.3d 490, 493 (10th Cir. 1998).

Federal law of claim preclusion applies. *See Murdock v. Ute Indian Tribe of Uintah & Ouray Reservation*, 975 F.2d 683, 687 (10th Cir. 1992) (citing, inter alia, Restatement (Second) of Judgments § 87, at 314 (1982) ("Federal law determines the effects under the rules of *res judicata* of a judgment of a federal court.")). Claim preclusion requires: (1) a judgment on the merits in the earlier action; (2) identity of the parties or their privies in both suits; and (3) identity of the cause of action in both suits. [4] *See King*, 117 F.3d at 445. The parties agree

_____

[4] Generally, Supreme Court precedent, Tenth Circuit precedent, and the majority of circuit courts note only three requirements in the initial determination of whether claim preclusion may apply. *See Rivet v. Regions Bank of Louisiana*, 118 S. Ct. 921, 925 (1998) ("Under the doctrine of claim preclusion, '[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'") (quoting *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981)); *King v. Union Oil Co. of California*, 117 F.3d 443, 445 (10th Cir. 1997); *Driver Music Co. v. Commercial Union Ins. Cos.*, 94 F.3d 1428, 1435 (10th Cir. 1996); *Massachusetts Sch. of Law at Andover, Inc. v. ABA*, 142 F.3d 26, 37 (1st Cir. 1998); *Board of Trustees of Trucking Employees v. Centra*, 983 F.2d 495, 504 (3rd Cir. 1992); Jones v. SEC, 115 F.3d 1173, 1178 (4th Cir. 1997); *Roboserve, Inc. v. Kato Kagaku Co.*, 121 F.3d 1027, 1034 (7th Cir. 1997); *Cabrera v. City of Huntington Park*, 159 F.3d 374, 381 (9th Cir. 1998); *Pleming v. Universal-Rundle Corp*., 142 F.3d 1354, 1356 (11th Cir. 1998); *Stanton v. District of Columbia Court of Appeals*, 127 F.3d 72, 78 (D.C. Cir. 1997). Other courts articulate four elements, but include as the fourth element a requirement that the prior court was of competent jurisdiction. *See Costner v. URS Consultants, Inc*., 153 F.3d 667, 673 (8th Cir. 1998); *Corbett v. McDonald Moving Servs. Inc*., 124 F.3d 82, 88 (2d Cir.

that the first two elements are present.  The issue here is whether the Wrongful

Discharge Action is sufficiently similar to the Overtime Action to warrant the

operation of claim preclusion.     Yapp argues that his two suits are rooted in

different transactions.  Excel argues that all claims arising from an employment

relationship constitute a single transaction or a series of sufficiently connected

transactions for purposes of claim preclusion.

This court has adopted the transactional approach of the Restatement

(Second) of Judgments in determining what constitutes identity of the causes of

action.  *See  Petromanagement Corp. v. Acme-Thomas Joint Venture*     , 835 F.2d

1329, 1335-36 (10th Cir. 1988).  The transactional approach provides that a claim

arising out of the same "transaction, or series of connected transactions" as a

previous suit, which concluded in a valid and final judgment, will be precluded.

Restatement (Second) of Judgments § 24 (1982) [hereinafter "Restatement"];     *see*

*also Nwosun v. General Mills Restaurants, Inc*     ., 124 F.3d 1255, 1257 (10th Cir.

---

1997);  *Bradley v. Armstrong Rubber Co.*    , 130 F.3d 168, 179 (5th Cir. 1997).
Occasionally, however, reference is made to a "full and fair opportunity to
litigate" as a requirement for claim preclusion.      *See, e.g.* , *Nwosun v. General*
*Mills Restaurants, Inc*   ., 124 F.3d 1255, 1257 (10th Cir. 1997).  The three
requirements referenced in the text, however, are in most circumstances all that
are necessary for a principled application of the doctrine of claim preclusion.
Consequently, the absence of a full and fair opportunity to litigate should be
treated as an exception to the application of claim preclusion when the three
referenced requirements are otherwise present.      *Cf. Kremer v. Chemical Constr.*
*Corp*., 456 U.S. 461, 481 n.22 (1982) (characterizing, in dicta, a full and fair
opportunity to litigate as a "limitation" on the application of claim preclusion).

1997) ("[A] cause of action includes all claims or legal theories of recovery that arise from the same transaction, event, or occurrence."). What constitutes the same transaction or series of transactions is "to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." Restatement § 24; *see also King*, 117 F.3d at 445.

The transactional test has been rearticulated by courts in a variety of ways, most of which focus upon whether the two suits are both based upon a discrete and unitary factual occurrence. For example, the First Circuit queries whether both suits depend upon "the same operative nucleus of fact." *Kale v. Combined Ins. Co. of Am.*, 924 F.2d 1161, 1166 (1st Cir. 1991). The Seventh Circuit assesses whether the two claims "are based on the same, or nearly the same, factual allegations." *Herrman v. Cencom Cable Assoc's Inc*., 999 F.2d 223, 226 (7th Cir. 1993). Some courts focus upon whether the two suits seek to redress the same injury. *See, e.g.*, *Kale*, 924 F.2d at 1166 (noting as part of transactional test whether suits "sought redress for essentially the same basic wrong").

In a case factually indistinguishable from the one here, this court concluded that the transactional test was met because "the 'claims' in each case were predicated on [plaintiff's] employment." *See Clark v. Haas Group, Inc*., 953 F.2d

1235, 1239 (10th Cir. 1992). The plaintiff Clark first sued her former employer under the FLSA, seeking to recover unpaid overtime compensation. *See id.* at 1236. Three months after the issuance of a stipulated order dismissing the action with prejudice, the plaintiff again sued her former employer, this time for wrongful termination [5] under the Age Discrimination in Employment Act and for violations of the Equal Pay Act. *See id.* The case proceeded to trial on the ADEA issue only. *See id.* at 1237. On appeal, this court held that the district court erred in failing to hold that the plaintiff's second claim was precluded by the first since both were based upon a single transaction: the employment relationship. *Id*. at 1239.

The pertinent facts of *Clark* and the case here are identical: both plaintiffs first sued their former employers for unpaid overtime compensation under the FLSA, and then both plaintiffs subsequently sued their former employers for wrongful discharge. The court in *Clark* eliminated all ambiguity in the meaning of "transaction" in this factual context: it stated that "the 'transaction' was Clark's employment." *Id*. No other court applying the transactional test has held

---

[5] The decision does not expressly state that the ADEA claim was premised on wrongful termination. *See Clark v. Haas Group*, 953 F.2d 1235, 1237 (10th Cir. 1992). Because the complainant sought and the jury awarded front pay, however, the ADEA claim was necessarily based upon wrongful termination. *See Spulak v. K Mart Corp*., 894 F.2d 1150, 1157-58 (10th Cir. 1990) (stating that front pay is awarded when reinstatement is not appropriate; both are remedies for wrongful discharge).

that suits arising from the same employment relationship are thereby necessarily grounded upon the same transaction. [6] This panel, however, cannot overrule *Clark*. *See United States v. Foster*, 104 F.3d 1228, 1229 (10th Cir. 1997) (noting rule that one panel cannot overrule another). Consequently, we are not free to transactionally distinguish wrongful termination claims from those claims arising out of the employment but before and unrelated to the discharge.

B.    *Dissent*

The dissent argues that the district court's order denying Excel's motion to consolidate rescues Yapp from claim preclusion otherwise dictated by *Clark* because he was somehow deprived of a full and fair opportunity to litigate the

---

[6] Some courts have addressed cases in which multiple suits arose from the same employment relationship and have concluded that the second suit was not precluded by the first because it was grounded upon a different transaction. *See, e.g.*, *Doe v. Alllied-Signal, Inc*., 985 F.2d 908, 914-15 (7th Cir. 1993) (holding suits premised upon different transactions when first suit against employer arose from rape of employee on work premises and second suit arose from employer's misrepresentations about plaintiff's status as an employee); *Kent County Bd. of Educ. v. Bilbrough*, 525 A.2d 232, 239-40 (Md. 1987) (expressly rejecting classification of employer-employee relationship as same transaction for claim preclusion purposes). Additionally, courts have precluded second suits brought by former employees because both suits were predicated upon the same discrete event, such as the employee's wrongful discharge, rather than the entirety of the employment relationship. *See, e.g.*, *Kale*, 924 F.2d at 1166 (holding that claim preclusion applied because both suits stemmed from plaintiff's termination); *Langston v. Insurance Co. of N. Am.*, 827 F.2d 1044, 1047 (5th Cir. 1987) (same); *Nwosun*, 124 F.3d at 1257 (same); *King*, 117 F.3d at 445 (same).

Wrongful Discharge Action.[7] The dissent is propped on two concepts: an immunization of the Wrongful Discharge Action from claim preclusion by the district court in its order denying Excel's motion to consolidate, and Yapp's reliance on that order to preserve the claim. Both props, however, are illusory.

Ironically, the very court order purportedly depriving Yapp of his opportunity to litigate was the work of his own advocacy in opposing the motion to consolidate. The district court's order merely maintained the very procedural status Yapp himself sought, i.e., separate lawsuits. This offending court order was both interlocutory and discretionary, and thus subject to reconsideration. *See* Fed. R. Civ. P. 42; *Fields v. Atchison, Topeka & Santa Fe Ry. Co.*, No. Civ. A. 95-4026, 1996 WL 109536, *1 (D. Kan. Feb. 7 1996) (citing *Shump v. Balka*, 574 F.2d 1341, 1344 (10th Cir. 1978)) (holding that grant or denial of motion to consolidate is discretionary). Nevertheless, although Yapp realized and even acknowledged to Excel[8] the risk of claim preclusion prior to settling the Overtime Action, he made no effort to have the district court revisit its interlocutory and discretionary order either to add language preserving his Wrongful Discharge Action or to unwind the maintenance of separate lawsuits. Instead, along with the risk of claim preclusion, Yapp took the $14,000 in settlement. It is thus difficult

---

[7] *See supra* footnote 4.

[8] *See supra* , notes 2 & 3.

to label this particular court order as the culprit in denying Yapp a full and fair opportunity to be heard.

Although the dissent eschews reliance upon Restatement § 26(1)(b), providing an exception to the application of claim preclusion when the district court has "*expressly* reserved the plaintiff's right to maintain the second action" (emphasis added), the tenor of its argument and its reliance upon *Louis Cook Plumbing & Heating, Inc. v. Frank Briscoe Co.*, 445 F.2d 1177 (10th Cir. 1971), suggests otherwise. *See* Dissent at 5. The dissent treats *Louis Cook* as standing for the proposition that a district judge may *impliedly* reserve a plaintiff's subsequent action. *See* Dissent at 4-5. First, we note that *Louis Cook* is of questionable precedential value because it recited a test for claim preclusion inconsistent with the transactional test, adopted by this court seventeen years later in *Petromanagement*. *See Louis Cook*, 445 F.2d at 1179. Second, the crux of *Louis Cook*'s holding is more consistent with an exception to claim preclusion articulated by the Restatement which provides relief to a plaintiff who was jurisdictionally barred in the first cause of action from asserting certain claims. *See* Restatement § 26(1)(c); *see also* Charles Alan Wright, et. al., *Federal Practice & Procedure* § 4412 (2d ed. 1994) (citing *Louis Cook* for the proposition that "[t]here may be some room to permit a second action if a court erroneously rules that an entire claim cannot be asserted in the first action"). Finally, even if

*Louis Cook* could be taken as being consistent with the § 26(1)(b) exception, unlike the district court here,[9] the court there *did* expressly provide, albeit not in the written judgment, that the first action would not preclude a second. *See Louis Cook*, 445 F.2d at 1178.

Finally, Yapp's reliance on the court order was non-existent and is instead simply a *post hoc* rationalization. The record shows that his conduct in settlement of his Overtime Action was consistent only with the absence of reliance: Yapp acknowledged the risk of claim preclusion despite the order and consequently he sought from Excel, unsuccessfully, an express exclusion of his Wrongful Discharge Action. At no point in his negotiations with Excel did Yapp invoke the court's order denying consolidation. On appeal, Yapp makes only brief and oblique suggestions of reliance. Moreover, Yapp has never asserted to this court that the district court's denial of Excel's motion to consolidate constituted a reservation of his second action.

Unexpressed but underlying the dissent is a sense that Yapp is an innocent victim of claim preclusion and thus deserving of the court's gentle hand of equity to save him from his own settlement. The dissent would rewrite the settlement

---

[9] Neither party had raised the issue of claim preclusion prior to or during the motion to consolidate and the court's order denying consolidation         because doing so would be "conducive to expedition and economy" reflects that claim preclusion was not an issue at this point in the litigation.

agreement, the Stipulation, to reinsert the very language to which Excel objected. In light of Yapp's acknowledgment and purposeful acceptance of the risk that claim preclusion would apply to his Wrongful Discharge Action, he is not entitled to reformation of the settlement by court order. With his eyes wide open, Yapp chose to forego a full and fair opportunity to litigate in order to satisfy his immediate appetite for $14,000. The lesson of this majority opinion is the only one consistent with *Clark*: Yapp was required to try or settle all of his employment claims, or negotiate with Excel for an express reservation of the Wrongful Discharge Action in the Overtime Action settlement agreement.

C. *Motion to amend*

This court reviews a trial court's decision whether to allow amendment of pleadings for abuse of discretion. *See Gillette v. Tansy*, 17 F.3d 308, 312 (10th Cir. 1994). An abuse of discretion may be found only when the district court has made an "arbitrary, capricious, whimsical, or manifestly unreasonable judgment." *FDIC v. Oldenburg*, 34 F.3d 1529, 1555 (10th Cir. 1994) (quotation omitted). The Federal Rules of Civil Procedure provide that a court should freely grant leave to amend when justice so requires. *See* Fed. R. Civ. P. 15(a).

Yapp's argument that the district court abused its discretion by allowing Excel to amend its answer is twofold: (1) Excel acted in bad faith by failing to

allege claim-splitting at any time earlier in the litigation; and (2) Excel waived its right to assert claim preclusion. Yapp's bad-faith argument asserts that Excel never put Yapp on notice that it thought the two suits constituted claim-splitting. Instead, Yapp asserts, Excel engaged in a "carefully orchestrated campaign" to lull Yapp into thinking that the Motion to Dismiss the Overtime Action would have no effect on the Wrongful Discharge Action until after the ten-day deadline had passed for Yapp to file a Rule 59 motion in the Overtime Action.

The proposed but unadopted settlement agreement [10] and the letter sent by Yapp's counsel to Excel on September 9, 1997, [11] do not constitute a waiver by Excel of its right to assert claim preclusion as a defense in the Wrongful Discharge Action. Yapp's counsel had a duty to be vigilant to the strategic nuances of litigation, which includes the ubiquitous multiple-litigation pitfall of claim preclusion.

Yapp's remaining waiver arguments were never made to the district court. In his Response to Defendant's Motion to Supplement Answer and Final Pretrial Order to Assert Additional Affirmative Defense, Yapp argued only that Excel's dealings with him in settling the Overtime Action evinced bad-faith conduct. He never mentioned or suggested Excel's failure to raise claim-splitting earlier in the

---

[10] *See supra*, note 2.

[11] *See supra*, note 3.

-15-

litigation. Similarly, during a pretrial hearing on October 9, 1997, Yapp only asserted the alleged bad-faith behavior and never once suggested failure by Excel to raise claim-splitting earlier in this litigation.

This court does not address issues that were not properly raised before the district court. *See Rademacher v. Colorado Ass'n of Soil Conservation Dists. Med. Benefits Plan*, 11 F.3d 1567, 1571 (10th Cir. 1993). Accordingly, in the war of the waivers, Yapp loses. This court can find no abuse of discretion by the district court in allowing Excel to amend its pleadings to include the affirmative defense of claim splitting.


D. *Rule 60(b) motion*

A district court's decision to grant or deny a Rule 60(b) motion is reviewed for an abuse of discretion. *See Stubblefield v. Windsor Capital Group*, 74 F.3d 990, 994 (10th Cir. 1996). Relief under Rule 60(b), however, is "extraordinary and may only be granted in exceptional circumstances." *See Cashner v. Freedom Stores, Inc*., 98 F.3d 572, 576 (10th Cir. 1996) (quotation omitted).

Yapp's 60(b) motion pleaded for relief from the September 11, 1997, Order of Dismissal with Prejudice in the Overtime Action. Yapp asserted that he was due relief under Rules 60(b)(1), (3), and (6), which provide relief to a party from final judgment for: (1) mistake, inadvertence, surprise, or excusable neglect; (3)

fraud, misrepresentation, or other misconduct of an adverse party; and (6) any other reason justifying relief from the operation of the judgment. In denying Yapp's 60(b) motion, the district court stated:

> Plaintiff chose to bring these actions separately. A Motion to Consolidate was denied, at Plaintiff's request . . . . The Stipulation filed with the Court did not mention [the Wrongful Discharge Action]. Whatever effect that Stipulation may have on the related case, it is clear that the parties reached an agreement to dismiss [the Overtime Action] with prejudice.

Rule 60(b)(1) motions premised upon mistake are intended to provide relief to a party in only two instances: (1) when the party has made an excusable litigation mistake or an attorney in the litigation has acted without authority; or (2) when the judge has made a substantive mistake of law or fact in the final judgment or order. *See Cashner*, 98 F.3d at 576 (citing 7 James Wm. Moore et. al., Moore's Federal Practice ¶ 60.22[2] (2d ed. 1985)). Excusable litigation mistakes are not those which were the result of a deliberate and counseled decision by the complaining party. *See id*. at 577. Rather, the kinds of mistakes remediable under a Rule 60(b)(1) motion are litigation mistakes that a party could not have protected against, such as counsel acting without authority. *See id.* Thus, a party who simply misunderstands or fails to predict the legal consequences of his deliberate acts cannot later, once the lesson is learned, turn back the clock to undo those mistakes. *See id.*; *see also Pelican Prod. Corp. v.*

*Marino*, 893 F.2d 1143, 1146 (10th Cir. 1990) ("Carelessness by a litigant or his counsel does not afford a basis for relief under Rule 60(b)(1).").

Yapp's careless or even simple mistaken reliance upon the language in the proposed but unsigned settlement agreement and his September 9, 1997, letter does not constitute the type of mistake deemed by this court as excusable. That he twice attempted to have Excel agree to certain preservation-of-claim language merely shows that Yapp's decision to move forward with the Motion to Stipulate as worded was counseled, if unwise. *See also Nemaizer v. Baker*, 793 F.2d 58, 61-64 (2d Cir. 1986) (declining to grant Rule 60(b)(1) or (6) relief to party who later regretted preclusive effect of signed stipulation to dismiss with prejudice).

Yapp fares no better under Rule 60(b)(3). He must prove Excel's alleged misconduct by clear and convincing evidence. *See Anderson v. Department of Health & Human Servs*., 907 F.2d 936, 952 (10th Cir. 1990). This he can do only by showing that Excel acted with "an intent to deceive or defraud the court," by means of a "deliberately planned and carefully executed scheme." *Robinson v. Audi Aktiengesellschaft*, 56 F.3d 1259, 1267 (10th Cir. 1995) (quotation omitted). All that Yapp has alleged on appeal is that he may have attempted to safeguard the Wrongful Discharge Action from claim preclusion by including claim-preserving language in a proposed but unsigned settlement agreement and in a letter to Excel's counsel which went unanswered. Yapp has proved that Excel

-18-

played hardball litigation. He has not, however, shown that the district court made a clear and definite error in concluding that Excel's behavior did not rise to the level of Rule 60(b)(3) misconduct.

Finally, Rule 60(b)(6) relief is even more difficult to attain and is appropriate only "when it offends justice to deny such relief." *Cashner*, 98 F.3d at 580 (quotation omitted). The denial of a 60(b)(6) motion will be reversed "only if we find a complete absence of a reasonable basis and are certain that the . . . decision is wrong." *State Bank of S. Utah v. Gledhill (In re Gledhill)*, 76 F.3d 1070, 1080 (10th Cir. 1996) (quotation omitted). As with the other 60(b) subsections, Yapp has failed to show that the district judge made a definite, clear, or unmistakable error in denying the Rule 60(b) motion. *See Pelican*, 893 F.2d at 1147. Accordingly, we conclude that the district court did not abuse its discretion and its denial of the Rule 60(b) motion is affirmed.

## III. CONCLUSION

For the foregoing reasons, the judgment of the United States District Court for the District of Colorado granting summary judgment to Excel is **AFFIRMED.**

98-1061, <u>Yapp v. Excel Corp.</u>

**HENRY**, J. dissenting.

I respectfully dissent because I believe the district court's decision – that the interests of judicial economy and an expeditious trial warranted separate trials in this matter – makes the application of claim preclusion improper in this case. This case does not turn on the merits of the plaintiff's case, or cases. Rather, it simply turns on the fact that when a court determines to allow claims to proceed separately, the parties may – indeed should – rely on the court's order. Any other result would mean that parties may never rely on a district court's decision to allow separate claims to be litigated separately, whether the court is motivated by trial economy, prejudice to the parties, or simple fairness. The idea that, having convinced the court (maybe even correctly) that claims should be tried separately, the plaintiff should subsequently suggest the court reconsider the issue because there *may* be a claim preclusion problem takes away the power of courts to adequately run their dockets. I also disagree with any suggestion that, even though a plaintiff has prevailed on a hostile motion to consolidate (and the defendant has in essence ratified that ruling by arguing it would be prejudiced by admission of evidence related to the other matter), he has waived any right to object to the application of res judicata because he did not ask the court to reconsider its decision.

Several reasons exist for this conclusion. First, a full and fair opportunity to present a claim, whether an essential element or an exception, is essential to any fair application of claim preclusion. And, just as courts have the power to expressly limit the

preclusive effects of *judgments*, this same power is inherent in a court's decision that claims should be tried separately. Otherwise, the plaintiff, who is precluded from presenting evidence from the second, unconsolidated claim in the first law suit, is denied a full and fair opportunity to litigate the unconsolidated claim if preclusion is applied. Second, Clark v. Haas Group, Inc., 953 F.2d 1235 (10th Cir. 1992) is of arguable validity, and a close reading of the case reveals that we are not required to apply claim preclusion in this case under Petromanagement Corp. v. Acme-Thomas Joint Venture, 835 F.2d 1329 (10th Cir. 1988). Finally, any settlement of such a claim must be construed to effect the intention of the parties, and it is clear from this record that the settlement did not reflect Mr. Yapp's willingness to waive the second claim.

### I. Full and Fair Opportunity and the Court's Power to Limit Preclusion
#### A. Full and Fair Opportunity

The majority argues that the requirement of "full and fair opportunity to litigate" is an "exception." See majority opinion at note 4. However, the district court and the parties believed that it was an "element" of claim preclusion. See Aplt's App., vol. I, at 251 (THE COURT: "The parties agree, and I don't think there is any dispute as to the *elements* of the *res judicata*, final judgment on the merits, the same parties, *a full and fair opportunity to litigate*, and the same cause of action.") (first and third emphasis added)). Further, the Supreme Court has stated, and we have held, that application of claim

-2-

preclusion requires a full and fair opportunity to litigate. See Kremer v. Chemical Constr. Corp., 456 U.S. 461, 481 n.22 (1982) ("While our previous expressions of the requirement of a full and fair opportunity to litigate have been in the context of collateral estoppel or issue preclusion, it is clear . . . that invocation of res judicata or claim preclusion is subject to the same limitation."); Nwosun v. General Mills Restaurants, Inc., 124 F.3d 1255, 1257 (10th Cir. 1997) (stating that the fourth factor necessary for claim preclusion is "a full and fair opportunity to litigate"), cert. denied, 118 S.Ct. 1396 (1998).

I am not sure whether a full and fair opportunity is an element, or an exception, or if it is an exception, whether it should nonetheless be treated like an element. Regardless, a full and fair opportunity to litigate is essential to the application of claim preclusion. Professor Wright notes:

> The central proposition of res judicata remains, as it has always been, that a party who has had a full opportunity to present a contention in court ordinarily should be denied permission to assert it on some subsequent occasion.

Charles Alan Wright, Law of Federal Courts § 100A (4th ed. 1983) (quotation omitted). Like the majority, Professor Wright indicates that a full and fair opportunity is sometimes called an "exception," however, he concludes that it is nevertheless essential:

> Neither claim preclusion nor issue preclusion can apply unless the party against whom preclusion is asserted had a "full and fair opportunity" to litigate the claim or issue in the first action. This is recognized in the exceptions to the rule of claim preclusion.

Id. (citing <u>Kremer</u>, 456 U.S. at 481 n.22).  Thus, I believe that whether it is characterized as an exception or an essential element, it is clear that a full and fair opportunity to litigate is essential to the application of claim preclusion.

In <u>Louis Cook Plumbing & Heating, Inc. v. Frank Briscoe Co.</u>, 445 F.2d 1177 (10th Cir. 1971), our court dealt with this issue.  In that case, a contractor had brought a prior action against the government under the Miller Act,  40 U.S.C. § 270, for labor and material supplied in the performance of a government contract.  At the time of judgment, in the colloquy between the court and counsel for the plaintiff, counsel asked the court to enter this judgment "without prejudice to the plaintiff to file an action in negligence or on any other theory of law."  <u>Id.</u> at 1178.  In response, the trial judge replied, "No, I would not care to put that in the formal judgment.  I have in essence said that in my findings, and I think it is clear, that the whole basis of the court's decision is purely the liability of the defendants under the Miller Act Bond, and nothing else."  <u>Id.</u>

This court then considered a subsequent action, related to the same project, in which the defendant-appellee raised the defenses of res judicata, estoppel, election of remedies, and waiver.  Below, the trial judge – similarly to this case – had ruled that the plaintiff's claims were barred by the judgment in the prior Miller Act case.  In reversing the decision below, our court concluded:

> We also conclude that the doctrine of res judicata does not bar appellant Cook's present action . . . .  We fully recognize that even though the existence of a separate cause of action sometimes may not be dispositive of the issue of res judicata, such rule cannot apply here because Cook was

-4-

> <u>actually denied the right to litigate any issue in the prior action except
> Miller Act questions</u>.

<u>Id.</u> at 1179 (emphasis added). Thus, while the judge in <u>Louis Cook</u> could have *expressly*

reserved the plaintiff's right to proceed in the second case, the judge felt it was

unnecessary, that plaintiff's right to proceed was *implicit* in his ruling. On appeal, we did

not apply claim preclusion. While it is true that the court found that the case involved

two distinct causes of action, the court went on to specifically acknowledge that the

existence of a separate cause of action is not always the dispositive issue in the

application of claim preclusion where a party was actually denied the right to litigate an

issue in the prior action.

> **B.      The District Court has the Power to Control Preclusion and its
>           Decision Meant the Second Claim Would Not Be Heard in the First
>           Action.**

Again, Professor Wright, this time joined by Professors Miller and Cooper, states

the black-letter law:

> Despite the general rule that a court cannot dictate preclusion consequences
> at the time of deciding a first action, it should have power to narrow the
> ordinary rules of claim preclusion. A judgment that expressly leaves open
> the opportunity to bring a second action on specified parts of the claim or
> cause of action that was advanced in the first action should be effective to
> forestall preclusion.

18 Wright, Miller & Cooper, <u>Federal Practice and Procedure</u> § 4413 (1981). Further, the

Restatement (Second) Judgments § 26(1)(b) provides a specifically defined "exception"

to the application of claim preclusion where the court "has expressly reserved the

plaintiff's right to maintain the second action."  This provision is not directly applicable in this case as there is no "express" reservation.  However, the comments to this section of the Restatement explain the practical litigation realities that require a trial court to be able to dictate the preclusive effects of a judgment.

> It may appear in the course of an action that the plaintiff is splitting a claim, but that there are <u>special reasons that justify his doing so</u>, and accordingly that the judgment in the action ought not to have the usual consequences of extinguishing the entire claim; rather the plaintiff should be left with an opportunity to litigate in a second action that part of the claim which he <u>justifiably omitted from the first action</u>.

Restatement (Second) Judgments § 26(1)(b), cmt. b (emphasis added).

Although the black-letter rule is in the context of a *judgment* whose preclusion is expressly limited by the court, there is no functional difference between such a judgment and a *ruling* that the claims are going to be tried separately.  In the case at bar, we have a decision, expressly made by the district court after argument and consideration, that Mr. Yapp's causes of action would be best tried in separate trials, and that the claims would in fact be tried in separate trials.  In its order, the district court specifically found that the "Plaintiff has stated valid reasons for filing the two cases separately and separate trials will be conducive to expedition and economy."  Aplt's App., vol. II, at 69.  Courts clearly have the power to control the litigation before them, and the plaintiff, after having convinced the court not to consolidate issues that would be better tried separately, clearly could not present arguments and evidence from the second case in the first action.  Further, as discussed *supra* section III, the defense moved to exclude evidence from the

second trial from being admitted into the first action because the evidence was "irrelevant," would cause "confusion of the issues," would "unduly delay" the trial, and would be a "waste of time." Aplt's App., vol. I, at 91-92. Under these circumstances, application of preclusion to countermand the court's decision that the matters would be best tried separately clearly results in a failure to provide Mr. Yapp a "full and fair opportunity to litigate," an important part of the "central proposition" of res judicata. The mere fact that the plaintiff persuaded the court that it made sense to separate the claims should not foreclose the plaintiff from continuing to maintain his second claim, any more than had the plaintiff persuaded the court to limit the preclusive effects of its judgment.

## II.     Clark and Petromanagement

### A.     Clark

I share my colleagues' concerns about the desirability of Clark v. Haas Group, Inc., 953 F.2d 1235 (10th Cir. 1992). See majority opinion at note 6, and accompanying text. However, those concerns aside, I do not find that Clark is dispositive in this case. Clark applies the transactional approach to claim preclusion first adopted by this circuit in Petromanagement Corp. v. Acme-Thomas Joint Venture, 835 F.2d 1329, 1335 (10th Cir. 1988). However, whether Mr. Yapp's claims constitute the "same transaction" is only one factor necessary for claim preclusion. And while it may be true that the district court erred in denying the defendant's motion to consolidate under the holding of Clark, as in

Petromanagement, "[w]hether the court abused its discretion in denying [the] motion to consolidate is not raised in this appeal." Id. at 1334. Rather, the dispositive issue before the court is what the *preclusive effect* should be of the district court's ruling that it was proper for the two causes of action to be tried separately. In my view, under the facts of this case, the district court's denial of the motion to consolidate eliminated the possibility of claim preclusion in the second action because to conclude otherwise would deny Mr. Yapp a full and fair opportunity to litigate his wrongful discharge claim.

### B. Petromanagement

I have been unable to find any case law addressing the preclusive effect of a denial of a motion to consolidate other than Petromanagement Corp. v. Acme-Thomas Joint Venture, 835 F.2d 1329, 1335 (10th Cir. 1988). At first blush, one might think that the holding of Petromanagement would require the application of claim preclusion in this case.

However, the holding of Petromanagement is very narrow. In Petromanagement, the plaintiff, an oil and gas corporation, attempted to use consolidation to add additional remedies to its already existing breach of contract action seeking recission and restitution. The plaintiff filed a second, separate claim for breach of contract (the same breach by the same parties) seeking actual and punitive damages. The plaintiff then filed a motion to consolidate this second claim with its first claim for recission and restitution "shortly

-8-

before [the first action] was scheduled to go to trial." Petromanagement, 835 F.2d at 1331. The plaintiff argued that the "actions involve common parties as well as common questions of law and fact." Id. at 1332. However, the judge refused to allow the plaintiff to consolidate the virtually identical actions because consolidation "would delay the trial" of the first action. Id. at 1334 (the court further denied plaintiff's motion to strike the first case from the trial docket and plaintiff's motion to dismiss the first action without prejudice). The judge, however, did not address the *merits* of the motion to consolidate.

Ultimately, rather than go to trial without punitive and actual damages being available remedies, Petromanagement stipulated to a dismissal with prejudice of the first action. A week later, the defendants moved to dismiss the second claim on the ground of claim preclusion. On the issue of claim preclusion, the district court found that "[b]ased upon plaintiff's admissions that these claims involve common parties and arise from a common nucleus of operative facts and upon plaintiff's contentions that these actions 'would be most conveniently tried in one proceeding,' and that 'separate trials of these cases would generate needless expense and needless demands upon the time and resource of all parties,' it is clear under the 'transactional' approach . . . that [the second] claim is barred." Id. at 1332. We upheld this ruling on appeal, holding that district court's "refusal to consolidate . . . does not eliminate the possibility of claim preclusion as to the untimely issues excluded." 835 F.2d at 1334 (emphasis added). But that ruling is inapposite here.

The key distinction between <u>Petromanagement</u> and the present case is that in <u>Petromanagement</u>, in ruling on the motion to consolidate, the judge never substantively ruled that the two cases should be tried in separate trials. Rather, the judge *denied* consolidation because the motion to consolidate was untimely and would delay trial. Undoubtedly, Petromanagement, if it had not waited until the eve of trial, certainly could have litigated the actual and punitive damages issues in the claim for recission and restitution – those remedies were based on the same underlying breach of contract by the same parties.

In the present case, however, the district court substantively determined that the two cases would best be tried in separate trials. After this ruling, both parties were precluded from raising the issues presented by Mr. Yapp's wrongful discharge claim in the overtime action -- these claims were proceeding in separate trials. Thus, <u>Petromanagement</u>'s decision that the second action was precluded with respect to untimely issues is distinguishable from this case, where the motion was timely and district court addressed and rejected the defendant's motion to consolidate on the merits. While it may be true that Mr. Yapp could have filed both cases in the same lawsuit, once a court determines on the merits that a claim will be tried in a separate suit, the claim is not one that "was or could have been litigated" and, therefore, I believe Mr. Yapp could not, and did not, have a full and fair opportunity to litigate the excluded claim.

### III. Waiver & Intent of the Parties

The majority implies that Mr. Yapp waived his right to argue for a full and fair opportunity to litigate and emphasizes the fact that Mr. Yapp could have asked the court to "revisit" its "discretionary" order that the two claims would best be tried separately. Unquestionably, this would have resolved the issue. However, it is not the burden of a plaintiff to anticipate, raise, and negate affirmative defenses for which the defendant clearly has the burden. See, e.g., Nwosun v. General Mills Restaurants, Inc., 124 F.3d 1255, 1257 (10th Cir. 1997) ("Res judicata is an affirmative defense on which the defendant has the burden to set forth facts sufficient to satisfy the elements."), cert. denied, 118 S.Ct. 1396 (1998); see also Fed. R. Civ. P. 8(c) ("In pleading to a preceding pleading, a party shall set forth affirmatively . . . affirmative defense[s]"). If anything, the failure of the defendant to raise the issue of claim preclusion in the first proceeding and its omission as a defense from its original answer should be the potential waiver.

The defense, however, not only did not raise the issue of res judicata in the first lawsuit, it took advantage of the trial court's decision that the claims would best be tried in separate law suits when it was to its advantage. In the first action, after the claims had been split, the defendant essentially confirmed the district court's conclusion regarding consolidation by filing a motion to exclude evidence from the second action (wrongful discharge), from being admitted into the first action because the evidence was "irrelevant" and prejudicial because it would cause "confusion of the issues," would

-11-

"unduly delay" the trial, and would be a "waste of time." Aplt's App., vol. I, at 91-92. Then, after settlement and dismissal, the defense seized the opportunity to again reverse positions and essentially argue that the prejudicial, irrelevant, confusing evidence in the second case should have been presented in the first case.

Finally, the record reflects that had the district court changed its ruling, Mr. Yapp would not have accepted the settlement offer. In a letter to the defendant, Mr. Yapp's counsel expressly stated that it was accepting the $14,000.00 for the overtime action only. The letter states in pertinent part:

> Mr. Yapp has decided to authorize us to file the Stipulation For Dismissal in this matter, in consideration of Excel's Fourteen-Thousand-Dollar ($14,000) payment.
> This will serve as notice that in seven (7) days from the date of this correspondence, we will disburse the funds represented by the two checks your office forwarded to us . . . . It is our understanding that the dismissal of this matter <u>will only determine the claims set forth in Civil Action No. 96-S-1350 [the overtime action], in the U.S. District Court for the District of Colorado.</u>
> . . . .
> <u>If you have any objections to the contents of this letter, please notify me</u> of the same no later than September 16, 1997, after which time we will disburse to ourselves and our client the checks forwarded in settlement of Civil Action No. 96-S-1350.

Aplt's App., vol. I, at 173 (emphasis added). The record does not reflect, and the parties do not argue, that the defendant or his attorney responded with any objections.

It is clear from the letter that Mr. Yapp did not intend to settle the second claim, and the general rule regarding consent judgments is that the intent of the parties should

control their preclusive effect:

> Consent judgments entered upon settlement by the parties may assume forms that range from simple orders of dismissal with or without prejudice to detailed decrees. Whatever form is taken, the central characteristic is that the court has not actually resolved the substance of the issues presented . . . .
> The basically contractual nature of consent judgments has led to general agreement that preclusive effects should be measured by the intent of the parties.

18 Wright, Miller & Cooper, Federal Practice & Procedure § 4443 (1981). While it is true that "consent judgments ordinarily support claim preclusion but not issue preclusion," see id., a consent judgment cannot, in my opinion, support claim preclusion or issue preclusion where there was not a full and fair opportunity to litigate, a problem compounded in this case by the fact that the plaintiff did not intend the preclusive effects the majority's opinion places on the consent judgment. Moreover, the fact that the parties could not agree to specific language for a detailed consent judgment (hence the simple order of dismissal in this case) does not somehow operate to waive plaintiff's right to a full and fair opportunity to litigate the excluded claim. Both parties chose to proceed without a detailed decree, equally risking an adverse outcome. And, in my opinion, given the district court's ruling that judicial efficiency warranted separate trials, it was necessary for the *defendant* in this case to include specific preclusive language in the consent decree or other settlement agreement, in order to avoid the plaintiff's right to a full and fair opportunity to litigate the excluded claim.

-13-

**V. Conclusion**

According to the Supreme Court, res judicata "has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." Parklane Hosiery Co., Inc. v. Shore, 439 U.S. 322, 326 (1979) (cited with approval in 18 Wright, Miller & Cooper, supra § 4403). For the reasons stated above, I simply fail to see how these purposes are effectuated by applying claim preclusion in this case. This was one of those relatively rare cases where the judge ruled that the claims *should* be tried separately for the purpose of promoting judicial economy – evidently agreeing with the defendant's later argument that the evidence in the second case was "irrelevant" and prejudicial because it would cause "confusion of the issues," would "unduly delay" the trial, and would be a "waste of time." Aplt's App., vol. I, at 91-92. Thus, the judge felt and ruled that the claims were not identical when he denied appellant's motion to consolidate – had they been the identical issue with the same parties, he would have granted the motion to consolidate. While Professors Wright, Miller and Cooper caution about creating uncertainty in the doctrine of res judicata "in an effort to achieve individualized justice," 18 Wright, Miller & Cooper, Federal Practice & Procedure § 4430, they also acknowledges that there is a risk associated with the judicial desire for general, broadly applicable rules regarding claim preclusion that do not take into consideration the practical realities of litigation:

> To the extent that the newer [broader] rules force litigants to take advantage of improved procedural opportunities for more comprehensive and effective initial litigation they represent a desirable process of continually adapting basic policies to new circumstances. There is a risk, however, that courts may lose sight of the irrational tactical realities that often counsel freedom for litigants to choose whether it is better to forego the possibility of a single comprehensive suit. Contemporary concern for judicial efficiency may augment this risk. Balancing these opportunities and risks will prove one of the major challenges to res judicata doctrine as it evolves in the years to come. The choices to be made will be complicated by the desirability of achieving general rules.

Id. The majority's position is clearly on one side of this legitimate divide and I am on the other. As I have lost this round, I might ask for reconsideration – a proper thing to do, in my opinion, but only when you *lose*.